Michael E. Hale and Michael J. Emerson, Little Rock, Ark., for defendants.

**Chris POLYCHRON, Plaintiff,**

v.

**CRUM & FORSTER INSURANCE COMPANIES and International Insurance Company, A Wholly–Owned Subsidiary of Crum & Forster Insurance Companies, Defendants.**

Civ. No. 89–6021.

United States District Court,
W.D. Arkansas,
Hot Springs Division.

Aug. 22, 1989.

## MEMORANDUM OPINION

OREN HARRIS, District Judge.

Before the Court are motions for summary judgment filed by both the plaintiff and the defendants. Plaintiff has responded to defendants' motion.

Plaintiff was president of Grand National Bank (the bank) in Hot Springs, Arkansas, from May 1979 through May 1983. On August 14, 1986, the grand jury for the Western District of Arkansas returned a five-count indictment against plaintiff charging him with violating the provisions of the Federal Currency Transaction Reporting Act (Criminal Case No. 86–60016–01). The alleged violations occurred while plaintiff was president of the bank. After rather lengthy proceedings,[1] the case was tried to a jury in December 1988, and plaintiff was acquitted of all charges against him.

In this action, plaintiff seeks recovery of the substantial legal fees and expenses he incurred defending his criminal case, based on a directors and officers liability insurance policy (the policy) issued to the bank by defendants. Plaintiff has demanded that defendants pay him the amounts allegedly due, but defendants have refused his demands. Plaintiff contends that there is no genuine issue of material fact and that he is entitled to judgment on his claim. Defendants agree that there is no genuine

---

1. See *United States v. Polychron*, 841 F.2d 833 (8th Cir.1988).

issue of material fact, but they argue that judgment should be in their favor.

The policy was in force from July 11, 1978, until July 11, 1985. According to plaintiff's complaint, the grand jury for the Eastern District of Arkansas subpoenaed certain bank records on September 17, 1984. On September 27, 1984, an assistant United States attorney and two Internal Revenue Service special agents questioned plaintiff concerning his involvement in matters relating to the documents provided to the Eastern District grand jury. As noted previously, plaintiff was indicted in the Western District on August 14, 1986. By the time the indictment was returned, the policy had expired.

Defendants contend that the return of the indictment constituted a "claim" under the policy, and that the "claim," therefore, did not arise until after the expiration of the policy. Plaintiff argues that the "claim" arose on September 17, 1984, before the policy expired, when the Eastern District grand jury issued its subpoena for bank records. Plaintiff further contends that the policy is ambiguous as to what constitutes a "claim" under the policy, and also in its definition of "loss."

The following are pertinent sections from Part I of the policy:

## 1. INSURING CLAUSE

If during the policy period any claim or claims are made against the Insureds ... or any of them for a Wrongful Act ... while acting in their individual or collective capacities as Directors or Officers, the Insurer will pay on behalf of the Insureds or any of them ... 95% of all Loss ... which the Insureds shall become legally obligated to pay....

\*　　\*　　\*　　\*　　\*　　\*

## 4. DEFINTIONS

\*　　\*　　\*　　\*　　\*　　\*

(b) The term "Wrongful Act" shall mean any actual or alleged error or misstatement or misleading statement or act or omission or neglect or breach of duty by the Insureds while acting in their individual or collective capacities, or any matter not excluded by the terms and conditions of this policy claimed against them solely by reason of their being Directors or Officers of the Company.

(c) The term "Loss" shall mean any amount which the Insureds are legally obligated to pay for a claim or claims made against them for Wrongful Acts, and shall include but not be limited to damages, judgments, settlements and costs, cost of investigation ... and defense of legal actions, claims or proceedings and appeals therefrom ... providing always, however, such subject of loss shall not include fines or penalties imposed by law, or matters which may be deemed uninsurable under the law pursuant to which this policy shall be construed.

\*　　\*　　\*　　\*　　\*　　\*

## 5. EXCLUSIONS

The Insurer shall not be liable to make any payment for loss in connection with any claim made against the Insured's:

\*　　\*　　\*　　\*　　\*　　\*

(e) brought about or contributed to by the dishonesty of the Insureds; however, notwithstanding the foregoing, the Insureds shall be protected under the terms of this policy as to any claims upon which suit may be brought against them, by reason of any alleged dishonesty on the part of the Insureds, unless a judgment or other final adjudication thereof adverse to the Insureds shall establish that acts of active and deliberate dishonesty committed by the Insureds with actual dishonest purpose and intent were material to the cause of action so adjudicated.

The policy was later amended to change the insurer's 95% liability under the policy to 100%, thereby eliminating the insured's obligation to pay 5% of any amount due under the terms of the policy.

Under Arkansas law, insurance contracts are to be construed according to general contract principles. *Perkins v. Clinton State Bank*, 593 F.2d 327 (8th Cir.1979). Contracts are not rendered ambiguous by the mere fact that the parties do not agree upon their proper construction. *Interna-*

*tional Brotherhood of Boilermakers v. Local Lodge D111,* 858 F.2d 1559 (11th Cir.1988); *Freeman v. Continental Gin Company,* 381 F.2d 459 (5th Cir.1967). Summary judgment is an appropriate method of resolving disputes involving the interpretation of unambiguous contracts. *Atkins v. Hartford Casualty Insurance Company,* 801 F.2d 346 (8th Cir.1986); *Howard v. Russell Stover Candies, Inc.,* 649 F.2d 620 (8th Cir.1981). *See* Wright, Miller & Kane, *Federal Practice and Procedure,* Civil 2d § 2730.1.

The basic question presented for the Court's consideration is what constitutes a "claim" under the policy, such as would invoke defendants' obligation to cover plaintiff's legal fees and expenses. Having reviewed the matter, the Court is of the opinion that the "claim" against plaintiff was the return of the indictment by the grand jury of the Western District of Arkansas.

The Court finds no ambiguity in the policy at issue here. The word "claim" is not defined in the policy. In such an instance, the Court must give ordinary meaning to the words. *Travelers Insurance Company v. Cole,* 3 Ark.App. 183, 623 S.W.2d 848 (1981). The definition of "claim" in *Black's Law Dictionary* is "[t]o demand as one's own or as one's right; to assert; to urge; to insist. Cause of action." *Id.* at 224 (Fifth ed. 1979). "Cause of action" is defined as "[t]he fact or facts which give a person a right to judicial relief ... [a] situation or state of facts which would which would entitle party to sustain action and give him right to seek a judicial remedy in his behalf." *Id.* at 201. In criminal proceedings, barring waiver of the indictment, it is the return of the indictment by a grand jury which gives the government the right to seek a judicial remedy. Obviously, plaintiff here did not waive the indictment.

In the present case, the Eastern District grand jury, which subpoenaed the bank records before the expiration of the policy, failed to indict plaintiff. It is therefore apparent that no cause of action existed as the result of the subpoena of the bank records at that time. Plaintiff was not indicted until nearly two years later by another grand jury in another judicial district, and that occurred after the policy had expired. Even though the indictment was probably brought about, in part, by the records subpoenaed at the earlier time, the fact that the Eastern District grand jury failed to indict plaintiff in 1984 means that no cause of action, or "claim," was instituted against plaintiff at that time. The policy requires that the claim be made during the policy period.

In addition, the policy states that "loss" includes the defense of legal actions. In criminal proceedings, unless and until an indictment is returned, there simply is nothing for an individual to defend. The facts that an investigation may be taking place and that an individual suspects that he may be indicted as a result of the investigation do not give rise to a cause of action. This is strikingly apparent in this case where the grand jury which initially subpoenaed the bank records, and which was apparently investigating plaintiff's conduct, failed to indict. Plaintiff retained counsel during the time of the investigation, seemingly in anticipation of being indicted, but the fact remains that he was not indicted at that time.

The Court can come to no other conclusion than to find that a "claim" was not made against plaintiff until he was indicted by the Western District grand jury on August 14, 1986, over a year after the policy had expired. Under the clear terms of the policy, defendants are not obligated to cover any legal fees or expenses plaintiff incurred. The Court will, therefore, grant defendants' motion for summary judgment and dismiss plaintiff's complaint with prejudice.

The Court incorporates into this memorandum opinion its findings and conclusions pursuant to Rule 52 of the Federal Rules of Civil Procedure.

A separate judgment will be entered in accordance with this opinion.