**Chris POLYCHRON, Appellant,**

v.

**CRUM & FORSTER INSURANCE COMPANIES; International Insurance Company, a Wholly Owned Subsidiary of Crum & Forster Insurance Companies, Appellees.**

No. 89–2415WA.

United States Court of Appeals, Eighth Circuit.

Submitted June 13, 1990.

Decided Oct. 11, 1990.

Rehearing and Rehearing En Banc Denied Dec. 11, 1990.

Rita S. Looney, Little Rock, Ark., for appellant.

Michael J. Emerson, Little Rock, Ark., for appellees.

Before ARNOLD, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and WOLLMAN, Circuit Judge.

ARNOLD, Circuit Judge.

The appellant, Chris Polychron, sued the appellees, Crum & Forster Insurance Company and International Insurance Company, for reimbursement of legal expenses under an officers' and directors' insurance policy. After both parties submitted motions for summary judgment, the District Court simultaneously granted the appellees' motion and denied the appellant's motion. 718 F.Supp. 33. Mr. Polychron appeals both rulings of the District Court. We reverse and remand.

---

## I.

The parties do not dispute the following facts. From May 1979 to May 31, 1983, Mr. Polychron served as the president of Grand National Bank of Hot Springs, Arkansas. On September 17, 1984, a grand jury in the Eastern District of Arkansas subpoenaed certain records of the Grand National Bank from the period when Mr. Polychron served as its president. Subsequently, on September 27, 1984, an Assistant United States Attorney and two Internal Revenue Service agents questioned Mr. Polychron concerning his work on matters relating to the documents subpoenaed from the bank. The grand jury for the Eastern District of Arkansas did not indict Mr. Polychron.

On August 14, 1986, however, a grand jury in the Western District of Arkansas (where the bank was located) issued a five-count indictment against the appellant, charging him with violations of the federal Currency and Foreign Transactions Reporting Act, 31 U.S.C. § 5311 *et seq.* The grand jury based its indictment on the same documents and transactions that the grand jury from the Eastern District of Arkansas had investigated in 1984. After lengthy legal proceedings,[1] a jury acquitted the appellant in December 1988 of all charges against him.

As an officer of the Grand National Bank from 1979 to 1983, Mr. Polychron was an insured under the bank's officers' and directors' liability insurance policy issued by the defendant International Insurance Company.[2] The policy's coverage extended from July 11, 1978 until July 11, 1985. The policy's Insuring Clause provided that

> If during the policy period *any claim or claims are made against the Insureds* (as hereinafter defined) or any of them for a Wrongful Act (as hereinafter defined) while acting in their individual or collective capacities as Directors or Officers, the Insurer will pay on behalf of the Insureds ... 95% of all Loss (as hereinafter defined), which the Insureds or any of them shall become legally obligated to pay....

(emphasis added).[3]

Mr. Polychron requested that the defendants reimburse him for the legal expenses he incurred beginning with the grand-jury investigation of September 1984. He contends that the grand-jury investigation, beginning with the subpoena for documents on September 17, 1984, was a "claim" against him under the policy. The defendants denied coverage, arguing that no "claim" for purposes of the policy existed against Mr. Polychron until the grand jury for the Western District of Arkansas indicted him in August 1986. By that time, the policy issued by the International Insurance Company had expired. The defendants also argued that expenses incurred in defense of a criminal action are not a covered "loss" under the policy.[4] In response to the this denial of coverage, Mr. Polychron filed this action.

## II.

This is an appropriate action for summary judgment since the parties dispute no issues of material fact. The parties agree that Arkansas law applies in this case. We

---

1. See, *e.g., United States v. Polychron,* 841 F.2d 833 (8th Cir.), *cert. denied,* 488 U.S. 851, 109 S.Ct. 135, 102 L.Ed.2d 107 (1988).

2. Crum & Forster Insurance Company is the parent company of the insurer, International Insurance Company.

3. The policy defined a "wrongful act" as "any actual or alleged error or misstatement or misleading statement or act or omission or neglect or breach of duty by the Insureds while acting in their individual or collective capacities...."

4. The policy defined a "loss" as

> any amount which the Insureds are legally obligated to pay for a claim or claims made against them for Wrongful Acts, and shall include but not be limited to damages, judgments, settlements and costs, cost of investigation ... and defense of legal actions, claims or proceedings and appeals therefrom, cost of attachment or similar bonds; providing always, however, such subject of loss shall not include fines or penalties imposed by law, or matters which may be deemed uninsurable under the law pursuant to which this policy shall be construed.

review then, as a matter of law, the District Court's holding that Mr. Polychron's legal expenses were not covered by the policy.

Although the word "claim" is not defined in the policy, the District Court held that its meaning was not ambiguous. Pursuant to Arkansas law, the Court gave "ordinary meaning" to the unambiguous term "claim." Under the ordinary-meaning test, the District Court reasoned that a grand-jury indictment constituted a claim, but a grand-jury subpoena and investigation did not. In reviewing this conclusion, we are mindful of the rule that we must defer to the District Court's interpretation of the law of its own state if that interpretation is based on a reasonable analysis and is not inconsistent with any reported state-court opinions. Here, we respectfully conclude that the District Court's interpretation of Arkansas law was not reasonable.

We disagree with the reasoning of the District Court in several respects. The District Court cited *Black's Law Dictionary* (5th ed. 1979) for the ordinary definition of a "claim": "[t]o demand as one's own or as one's right; to assert; to urge; to insist. Cause of action." We do not fault the District Court for relying on *Black's Law Dictionary*, but we disagree with its emphasis on the legal phrase "cause of action." By focusing on "cause of action" as the definition of a "claim," the District Court disregarded the term's "ordinary" meaning, contrary to Arkansas law. See, *e.g., State Farm Insurance Companies v. Gilbert*, 3 Ark.App. 52, 621 S.W.2d 880 (1981).

As the District Court's own source reveals, the term "claim" has a broader definition. We believe that definition encompasses the first grand-jury investigation of Mr. Polychron. The function of a subpoena is to command a party to produce certain documents and therefore constitutes a "claim" against a party. The subpoena, it is true, was directed to the bank, but the documents demanded (not merely requested, as defendants would have it) related to the plaintiff's conduct as a bank official. Further, the grand jury's investigation and

the questioning by the Assistant United States Attorney amounted, as a practical matter, to an allegation of wrongdoing against Mr. Polychron, for which he prudently hired an attorney. The defendants' characterization of the grand-jury investigation as mere requests for information and an explanation underestimates the seriousness of such a probe. As later events proved, the plaintiff was the target of the investigation.

Even if the term "claim" is ambiguous and not subject to the ordinary meaning test, Mr. Polychron's interpretation of "claim" prevails. Under Arkansas law, "provisions contained in a policy of insurance must be construed most strongly against the insurance company which prepared it...." *Home Indemnity Co. v. City of Marianna*, 297 Ark. 268, 272, 761 S.W.2d 171, 173 (1988). Therefore, "if a reasonable construction may be given to the [policy] which would justify recovery, it is the duty of the court" to adopt that construction. *Id.* (citation omitted). This rule of construction requires us to read the policy in favor of Mr. Polychron. Viewing a grand-jury subpoena and investigation as "claims" against Mr. Polychron is a reasonable construction of the insurance policy.

Contrary to the defendants' assertion, our use of the rule of strict construction does not contradict another rule of construction, admonishing courts not to rewrite insurance policies. We cannot agree that paying the attorney's fees of a bank president who was the target of a grand-jury investigation is a "plainly excluded" risk under the policy. *Southern Farm Bureau Casualty Insurance Co. v. Williams*, 260 Ark. 659, 543 S.W.2d 467 (1976).

As an additional ground for its ruling, the District Court found that Mr. Polychron's legal fees prior to his indictment did not constitute a covered "loss" under the policy. We disagree. Mr. Polychron hired an attorney to aid in his defense as the target of a grand-jury investigation. Thus, the fees charged by the attorney were reasonably incurred in "defense of ... claims" under the loss provision of the policy. We also reject the defendants' ar-

gument that defense of a criminal matter is not a covered loss. While the policy excludes "fines or penalties imposed by law," it does not exclude attorney's fees incurred in defense of a criminal matter, at least where the insured is acquitted, as Mr. Polychron was.

### III.

In summary, we conclude that it was erroneous as a matter of Arkansas law for the District Court to grant summary judgment in favor of the appellees. We reverse the judgment and remand the case to the District Court for further proceedings consistent with this opinion.

It is so ordered.