124 F.3d 205
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Stephanie TRICE, Plaintiff-Appellant,
v.
EMPLOYERS REINSURANCE CORP., Garnishee Defendant Third Party
Defendant-Appellee.
and
Richwood Agency, Richard L. Williamson & Victoria Velikan,
Judgment Defendants.
 No. 97-1271.
 United States Court of Appeals, Seventh Circuit.
 Argued July 9, 1997.
Decided July 28, 1997.
 
 Before BAUER, FLAUM, and ROVNER, Circuit Judges.
 Appeal from the United States District Court for the Southern District of Indiana, Indianapolis Division, No. IP96-0453-C M/S; Larry J. McKinney, Judge.
 
 ORDER
 
 1
 In this case involving insurance coverage, Stephanie Trice sought to recover a judgment awarded against the Richwood Agency (Richwood) under Richwood's reinsurance policy with Employers Reinsurance Corporation (Employers). The district court granted summary judgment to Employers, on grounds that Richwood's reinsurance policy had lapsed before Trice made her claim. The sole issue in this appeal is whether Trice first made a "claim," within the meaning of Employer's policy to Richwood, before July 28, 1990. We affirm.
 
 I.
 
 2
 Stephanie Trice and her soon-to-be-ex-husband had an insurance policy with the Richwood Agency, under the husband's name, to cover their autos. Because the couple was getting divorced, they decided to get separate policies for each of their cars. On May 7, 1990, Trice called Richwood and asked to purchase an automobile insurance policy. Victoria Velikan, an agent at Richwood, told Trice to send Richwood a check for $126 in order to secure the policy. Trice did so on June 15, 1990. In July of 1990, she noticed that her check had not cleared. She called Richwood, and Velikan assured her that she was covered. She called Richwood weekly thereafter, and each time was told that she was covered. On August 10, 1990, Trice was involved in an accident with an uninsured motorist. She reported the accident to Richwood on August 13. Velikan again told her that she was insured, and arranged to provide Trice with a rental car, for which Richwood would pay. Trice left her damaged auto at a body shop. Although Richwood assured the body shop that a check was in the mail, no check ever arrived, and so the shop never repaired Trice's car. In November of 1990, Trice's check to Richwood still had not cleared. Velikan advised her to write another check to Richwood, which Trice did. That check cleared on November 21, 1990.
 
 
 3
 On November 8, 1990, the State of Indiana suspended Trice's driver's license for lack of insurance. The suspension was lifted when Richwood's president, Richard Williamson, filed an Accident Report stating that Trice was insured. It later turned out that Velikan had forged Williamson's signature on the report. By February of 1991, a finance company was threatening to repossess Trice's car and sue her for any deficiency, while the car rental agency was threatening to sue her for failure to pay for the rental car. That same month, Williamson called Trice and told her that it appeared no policy had ever been issued. Apparently, Velikan had failed to process over twenty applications for insurance, and Richwood was missing some $3000 in premiums. Trice sued Richwood. The Indiana state court ruled that Velikan's failure to issue an insurance policy in June of 1990 constituted negligence, and that negligence was the proximate cause of Trice's damages. Trice received a judgment of $14,455.42 in compensatory damages, and § 150,000 in punitive damages. The validity of that judgment is not at issue in the case at bar.
 
 
 4
 Trice then sought to collect her judgment. Williamson in turn sought payment from Employers Reinsurance Corp., with whom Richwood had a professional liability, or "errors and omissions" policy. This Policy required Employers to pay Richwood for any loss:
 
 
 5
 "sustained by the Insured [Richwood] by reason of liability imposed by law for damages caused by: (a) any negligent act, error, or omission ... arising out of the conduct of business of the Insured ... as a general insurance agent ... as respects claims first made against the Insured during the policy period."
 
 
 6
 The Policy also provided a definition of "claims first made:"
 
 
 7
 The term "claims first made" shall mean that the insured has received notice of legal process, that a demand for money or service has been made against the insured, or that the insured has become aware of a proceeding, event or development which has resulted in or could in the future result in the institution of a claim against the insured. In the event of any such proceeding, event or development, notice must be [sic ] to the corporation during the policy period[.]
 
 
 8
 Unfortunately for Trice, Richwood's Policy with Employers had lapsed on July 28, 1990, thirteen days before her accident. Consequently, Employers refused to pay, arguing that no claim was made during the period in which Richwood was insured by Employers. Trice, on the other hand, maintained that her June, 1990 payment for insurance from Richwood, which the agency negligently omitted to issue, and her calls seeking to make sure that she was covered, constituted a "claim first made" within the period of the Policy. The district court granted summary judgment to Employers. The court ruled that under the language of the Policy, a "claim" did not mean an action which might potentially lead to a reimbursement. Rather, "claim" specifically meant an invocation of coverage under the reinsurance policy. Because no such claim was made before July 28, 1990, the court reasoned, Trice could not prevail.
 
 II.
 
 9
 The language of the Policy establishes three ways to make a claim. Trice concedes that during the time in which the Policy was in effect, Richwood neither received notice of legal process, nor became aware of a proceeding which could result in a claim under the Policy. She argues, however, that her actions in properly seeking an insurance policy and, when her check did not clear, repeatedly phoning Richwood about her auto insurance, and repeatedly receiving assurances that she was covered, constituted a "demand for services against the Insured," within the meaning of the Policy. Trice concedes that the calls about her insurance policy were not a demand for services under the Employer reinsurance policy. Rather, she argues that the calls were a demand for services (i.e. the issuance of a policy) from Richwood. Both parties concede that Trice made her repeated inquiries while the Policy remained in effect.
 
 
 10
 There is some logic behind Trice's argument. She paid for an insurance policy, and repeatedly sought assurance that the policy had been issued. Velikan falsely assured Trice that she had insurance coverage, despite the fact that Richwood never issued such a policy. The, Indiana state court ruled that in June of 1990, Velikan was negligent in failing to issue a policy, and that negligence was the proximate cause of the damages Trice suffered as a result of the auto accident on August 10, 1990. The purpose of Richwood's Policy with Employer's was to cover Richwood for liability incurred for negligent acts or omissions, including services as a general insurance agent. That Policy was undisputedly in effect at the time that Velikan negligently omitted to issue insurance to Trice. Consequently, Trice maintains, Employers must cover Richwood's liability to her.
 
 
 11
 If Richwood's professional liability policy with Employers had been an "occurrence" policy, Trice would prevail. Occurrence policies "insure against a negligent or other liability-causing act or omission that occurs during the policy period regardless of when a legal claim arising out of the act or omission is made against the insured." National Union Fire Ins. Co. of Pittsburgh v. Baker & McKenzie, 997 F.2d 305, 306 (7th Cir.1993). The date of the liability-creating act determines whether there is coverage. Richwood's policy with Employers, however, was a "claims made" policy. "[A] claims-made policy protects the insured against the financial consequences of a legal claim asserted against him during the policy period." Truck Ins. Exch. v. Ashland Oil, Inc., 951 F.2d 787, 790 (7th Cir.1992). Thus, the claims-made policies generally provide coverage "no matter when the alleged error or omission or act of negligence occurred, provided the misdeed complained of is discovered and the claim for indemnity is made against the insurer during the policy period." Inland Waters Pollution Control, Inc. v. National Union Fire Ins. Co., 997 F.2d 172, 187 (6th Cir.1993) (internal quotation omitted); Township of Center, Butler County, Pennsylvania v. First Mercury Syndicate, Inc., No. 96-3290, --- F.3d ----, 1997 WL 349856, * 3 (3d Cir.1997); Esmailzadeh v. Johnson & Speakman, 869 F.2d 422, 424 (8th Cir.1989). Thus, under a professional liability policy like the one at issue here, a "claim" is a demand made upon the insured as a result of its negligent acts or omissions. Katz Drug Co. v. Commercial Standard Insurance Co., 647 S.W.2d 831, 835 (Mo.Ct.App.1983) (emphasis added).
 
 
 12
 Trice insists that her repeated attempts to make sure she had insurance constitute a claim, based on a breach of contract by Richwood. The case law does not support this position. "[A]n actual claim is distinguished from an 'event' which could give rise to an actual claim in the future." Employers Ins. of Wausaw v. Bodi-Wachs Aviation Ins. Agency, Inc., 39 F.3d 138, 143 (7th Cir.1994). Requests for information--even if they allude specifically to the possibility of a lawsuit[1]--do not constitute a "demand for money or services" within the meaning of a claims-made policy. National Fire Ins. Co. v. Bartolazo, 27 F.3d 518, 519 (11th Cir.1994). And under Indiana law, which governs this diversity case, an insured person's negligence claim for failing to obtain liability insurance accrues when the insured becomes aware that she lacks coverage for claims arising under the policy for which she paid. Lift-A-Loft Corp. v. Rodes-Roper Ins. Agency, Inc., 975 F.2d 1305, 1312 (7th Cir.1992), Butler v. Williams, 527 N.E.2d 231, 233-34 (Ind.Ct.App.1988) Trice did not learn that Richwood had failed to provide insurance coverage until February of 1991, months after the Policy had lapsed. It is true, as Trice notes, that she diligently attempted to make sure that she had coverage. She could not reasonably have learned of the lack of coverage until 1991. But that is not enough to convert the Policy from a "claims made" to an "occurrence" policy.[2]
 
 
 13
 Consequently. Trice's request for auto insurance coverage from Richwood does not constitute a "claim first made" within the meaning of Richwood's professional liability insurance policy with Employers. The requests for insurance, and Velikan's failure to issue the requested policy, were "occurrences," part of a liability-creating event which eventually led to Trice's claim against Richwood. That claim arose in February of 1991, when she learned that Richwood had not provided her with the insurance for which she had paid. This claim was not covered by the Policy from Employers. We realize that this conclusion puts Trice in an unfortunate position: she has a valid judgment, which she apparently cannot collect.[3] But that does not mean Employers must pay. The fault lies with Richwood, which both failed to issue insurance to Trice as she asked, and failed to maintain its own insurance coverage.
 
 
 14
 AFFIRMED.
 
 
 
 [1]
 A "demand for money or services" does not, however, "require a formal lawsuit or the institution of arbitration proceedings as a prerequisite to the existence of a claim." International Insurance Co. v. Peabody International Corp., 747 F.Supp. 477, 480 (N.D.Ill.1990). Rather, a claim is any "demand for services as a right." Id
 
 
 [2]
 A "claims made" policy is less expensive than an "occurrence" policy, because it covers a definite, rather than indefinite, period of time. Thus, an insured who purchases a "claims made" policy exchanges gets less extensive coverage in exchange for smaller premiums--with the corresponding risk that, if the insured does not police potential claims carefully, it may find itself without coverage. Much of the litigation over "claims made" policies concerns whether the insured has adequately policed potential claims, and informed its insurer in a timely fashion
 
 
 [3]
 The Richwood Agency is still in business, but apparently is judgment-proof Velikan has disappeared