RICHARDSON ELECTRONICS,
LTD., Plaintiff,

v.

FEDERAL INSURANCE COMPANY,
Defendant.

No. 98 C 6865.

United States District Court,
N.D. Illinois,
Eastern Division.

June 21, 2000.

Scott Hodes, Ross & Hardies, Chicago, IL, for Plaintiff.

Mitchell A. Orpett, Tribler Orpett & Crone, P.C., Chicago, IL, David J. Hensler, Hogan & Hartson L.L.P., Washington, DC, for Defendant.

## MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

Richardson Electronics ("Richardson"), a distributor of electron tubes, took out insurance from Federal Insurance ("Federal") for losses it or its officers and directors incurred due to legal liability for wrongful acts. Richardson then pleaded guilty to a criminal antitrust violation after an investigation by the Antitrust Division of the Justice Department ("Justice"), and settled a civil antitrust complaint that the government had filed in that connection for $1.5 million. Justice also indicted two of Richardson's officers for interstate transportation of stolen property, among other crimes. Federal agreed to cover their defense insofar as the costs exceeded the policy deductible of $1 million. Richardson expended over $5 million in legal fees on these cases Federal refused to pay up, saying that the total of insured losses came only to about $700,000—less than the deductible. Richardson brought this diversity contract suit under Illinois law,[1] and both parties move for summary judgment. I grant Federal's motions in part and deny them in part, and deny Richardson's motions.

I.

Richardson bought a "claims made" Executive Risk insurance policy from Federal with coverage effective May 1989.[2] The policy covered unindemnified losses of directors or officers due to legal liability for wrongful acts they committed before or during the policy period, and also insured Richardson for losses due to indemnifying any officers or directors for such acts.[3]

1. Richardson is a Delaware corporation with its principal place of business is in LaFox, Illinois; Federal is an Indiana corporation with principal places of business in Indianapolis, Indiana and Warren, New Jersey.

2. A claims made policy limits coverage to claims made during the policy period and reported to the insurer within a certain period. An "occurrence" policy, by contrast, covers occurrences within the policy period regardless of when filed. *Lexington Ins. Co. v. Rugg & Knopp, Inc.*, 165 F.3d 1087, 1089 (7th Cir.1999).

3. The key terms of the policy are that Federal would pay "on behalf of each of the insured persons"—Richardson's officers and directors—"all loss [including defense costs] for which [he] is not indemnified by the insured

The policy was acquired none too soon, because Richardson was a beehive of criminal activity. In March 1989, Justice began to investigate criminal antitrust charges that Richardson and another firm, Varian Associates of California, conspired to raise vacuum tube prices by collecting rebuildable vacuum tube carcasses to keep them out of competition with their own products. Justice served a Civil Investigative Demand on March 9 with various interrogatories, and also subpoenaed many documents and much personal testimony by various Richardson executives and employees.

In October 1989, Richardson had its insurance broker, Northbrook Risk Managers ("Northbrook"), notify Federal of the investigation (through Chubb Group of Insurance Companies). Northbrook wrote, however, that "[a]t this time there is no claim being filed." Federal retained Sutherland, Asbill & Brennan ("Sutherland Asbill") as counsel in the antitrust matter. In April, 1990, the Justice investigation widened to include more Richardson employees as targets, some of whom retained separate counsel. On June 11, 1990, Federal acknowledged that it had "notice of a potential claim regarding possible antitrust violations." Justice decided not to indict any Richardson employees, but in September 1990, Richardson pleaded guilty to a single criminal count of violating the Sherman Antitrust Act, 15 U.S.C. § 1.

Meanwhile, in April 1990, two Richardson officers, CEO Edward Richardson and Executive Vice President Dennis Gandy, were indicted for claims involving the theft of customer lists of Ceco Communications, a competitor. They were charged with conspiracy and interstate transportation and receipt of stolen property ("ITSP").

Richardson notified Federal of the indictment, stating that Cotsirilos, Stephenson, Tighe & Streicker had been retained to defend Mr. Richardson and Jenner & Block to defend Mr. Gandy. Federal agreed to pay their defense costs, subject to the deductible. In pretrial proceedings, another judge of this court held the antitrust matters were "extraneous" to the crimes with which they had been charged. *United States v. Richardson*, No. 90 CR 345, 1990 WL 91514, at *5–6 (N.D. Ill., June 21, 1990).

On October 1, 1991, after extensive negotiations, Justice agreed to accept Richardson's guilty plea and to levy a fine of $500,000 for its criminally anticompetitive conduct. It dismissed the ITSP case. On September 30, 1991, Richardson entered into the civil settlement, agreeing to pay $1.5 million in exchange for Justice releasing all civil claims in the antitrust affair against Richardson or its executives. In 1996, Richardson requested coverage of legal fees in the criminal antitrust matter and the ITSP case, and of the amount of the civil settlement itself. Federal declined to pay, and Richardson sued.

## II.

 I will analyze the cross motions for summary judgment together. Federal argues, first, that the costs of legal representation in the Justice antitrust investigation were not covered under the insurance policy because they did not arise "on account of any claim(s) made against" an insured person. According to Federal, the antitrust investigation did not constitute a claim under the terms of the policy. The

organization"—Richardson—that he is "legally obligated to pay on account of any claim(s) made against him ... for a wrongful act committed ... before or during the policy period." Federal would also pay "on behalf of" [Richardson] all loss for which [Richardson] grants indemnification to each insured person ..., which [he] has become legally obligated to pay on account of [such] a claim.

A "wrongful act" meant any "act or omission" committed by an insured person, and losses arising out of "interrelated" or "causally connected" acts or omissions were deemed to be "one loss." Losses included "defense costs," those "incurred in defense of legal actions, claims, or proceedings ..." Federal was only to be liable for defense costs to which it had "consented."

term "claim" is not defined in the policy, but the leading Illinois case says:

> According to Webster's Fifth New Collegiate Dictionary 205, the term claim means "a demand for something due or believed to be due." The word has no different usage in the insurance industry. . . . A claims made provision in the policy mandate[s] the conclusion that a claim must be a third party demand. . . . The term "claim" in a policy was in the nature of an actual demand for something.

*Central Illinois Public Service Co. v. American Empire Surplus Lines Ins. Co.,* 267 Ill.App.3d 1043, 204 Ill.Dec. 822, 642 N.E.2d 723, 725–26 (1994) (*CIPS*). The demand must, however, be actual. The mere fact that the insured "reasonably conclud[ed] that a claim would inevitably be brought" would be insufficient to trigger coverage under a claims-made policy. *Id.* Federal argues that a claim must be a demand for a payment of money, citing *Evanston Ins. Co. v. Security Assurance Co.,* 715 F.Supp. 1405, 1412 (N.D.Ill.1989). A claim that a wrongful act occurred "is not the same thing as a claim for payment on account of a wrongful act." *MGIC Indemnity Corp. v. Home State Savings Assoc.,* 797 F.2d 285, 288 (6th Cir.1986). Here, Federal says, no one ever demanded any money of Richardson's officers or directors in relation to the antitrust case.

Federal's narrow reading of "claim" as a "demand for money" is inconsistent with Illinois law as stated in *CIPS*. A claim is a demand for *something* due. A demand for money is not required for a claim, and it would frustrate the point of an executive risk insurance policy to require such a demand unless it were expressly indicated in the policy language. *See Harbor Ins. Co. v. Continental Illinois Corp.,* No. 85 C 7081, 1989 WL 152648, at *4 (N.D.Ill. Nov. 30, 1989) (unpublished memorandum opinion), *reversed on other grounds* by 922 F.2d 357 (7th Cir.1990). If that is what Federal meant to say, it could have said it. The Justice investigation involved a claim because it required Richardson and its officers and directors to comply with various demands for testimony and production of documents. *See Polychron v. Crum & Forster Ins. Co.,* 916 F.2d 461, 463 (8th Cir.1990) (A "subpoena command[s] a party to produce certain documents and therefore constitutes a 'claim' against [him, and] . . . [grand jury investigation] amount[s], as a practical matter, to an allegation of wrongdoing.").

Federal refers me to an unpublished Seventh Circuit case, *Trice v. Employers Reinsurance Corp.,* No. 97–1271, 1997 WL 449736 (7th Cir. July 28, 1997), for the proposition that "[r]equests for information—even if they allude specifically to the possibility of a lawsuit—do not constitute a 'demand for money or services' within the meaning of a claims-made policy." *Id.* at *3. However, characterizing a Justice investigation as involving a "request" for information understates the seriousness of what such an investigation involves, as the Eighth Circuit noted in *Polychron,* 916 F.2d at 463; and moreover in *Trice,* the Seventh Circuit itself defined "claim" in the same broad terms as the Illinois courts: "Thus, under a professional liability policy like the one at issue here, a 'claim' is a demand made upon the insured as a result of its [wrongful] acts or omissions." 1997 WL 449736, at *3.

### III.

#### A.

■ The subpoenas and other demands made in antitrust investigation constituted a claim within the meaning of the policy. Federal argues that it should not have to pay anyway, because the policy covers defense costs of directors and officers, but not of Richardson itself, so the fees of Richardson's antitrust counsel, Sutherland Asbill, are not covered. Richardson responds that Sutherland Asbill represented individual officers and directors, not just the corporation itself. It offers affidavits from, among others, Donald Baker, the

partner then at Sutherland Asbill who was primarily responsible for the antitrust matter. He swore that notwithstanding the separate or additional representation of some Richardson executives by other firms, Sutherland Asbill continued to represent the interests of all Richardson employees in connection with both the criminal antitrust investigation and the ITSP case. According to Federal, the factual record in its totality shows that Baker and the other affiants have perjured themselves or are just wrong. Both parties argue the documentary record in favor of their view. However, this is a material issue of fact. Baker's credibility and what weight to accord the other evidence are questions for the jury.

■ Federal also argues that it was never notified of and never specifically consented to Sutherland Asbill's representation of individual Richardson executives, and so is not liable under the policy.[4] Richardson responds that Federal was notified, and that it would not have been reasonable for Federal to withhold consent. However, the policy term "consented" is ambiguous. The policy does not say that express written consent is required. Illinois law allows for implied consent. *See Taitt v. Robinson,* 266 Ill.App.3d 130, 203 Ill.Dec. 334, 639 N.E.2d 893, 896 (1994) ("Implied consent is implicated if an inference can be fairly raised, based upon a course of conduct or the relationship of the parties or a lack of objection, that indicates the existence of consent.") (tort context); *DeWitt County Public Bldg. Comm'n v. County of DeWitt,* 128 Ill.App.3d 11, 83 Ill.Dec. 82, 469 N.E.2d 689, 701 (1984) ("[C]onsent may find expression in acts as readily as in words.") (contract context). Because in Illinois ambiguity is resolved against the insurer, *Bd. of Ed. of Maine Township H.S. Dist. 207 v. Int'l Ins. Co.,* 292 Ill.App.3d 14, 225 Ill.Dec. 987, 684 N.E.2d 978, 981 (1997), I hold that the

contract allows for implied consent. For the purposes of Federal's summary judgment motion, I must assume that Federal was notified and, by failing to object, tacitly consented to any representation of individual Richardson executives by Sutherland Asbill. However, for the purposes of Richardson's summary judgment motion, the inference cuts the other way, and I must assume that Federal was not notified and therefore did not consent. Whether there was notification and implied consent is a jury question.

### B.

■ Federal then contends that the legal expenses of Richardson's officers and directors are lower than the policy's $1 million deductible. It peels out the costs of the ITSP case against Messrs. Richardson and Gandy as a separate loss under the policy, and then asserts that the remaining costs are less than $1 million. Richardson replies that both cases involved criminal attempts to suppress competition. However, the relation of analogy is not what the policy calls for. If Messrs. Richardson and Gandy each had separately murdered an irritating relative, both crimes would be homicide, but not "causally connected" as the policy requires to give rise to a single loss.

Invoking the fact that Justice treated the two matters as a whole, at least in wrapping the Richardson affair up, Richardson argues that they are causally connected. This is not shown, however, unless the causal connection that Richardson means to invoke is the general atmosphere of criminal disregard for the law at the firm. But that does not come within the meaning of the policy term, which I read to say that causally connected matters are causes or effects of each other or integral parts of a single scheme, not merely inde-

---

4. The October 1989 letter from Northbrook stating "[a]t this time there is no claim being filed" goes to whether Federal had notice and not whether a claim existed. On Federal's motion for summary judgment, I must read this statement as saying that a claim had arisen and was thereby made, but Richardson was not yet *filing* for reimbursement.

pendent effects of a common cause. Although the doctrine of judicial estoppel does not apply because the parties and the factual circumstances differ, *see Ezekiel v. Michel,* 66 F.3d 894, 904 (7th Cir.1995), I agree with the judge in the ITSP case, who stated that the antitrust and ITSP matters were mutually extraneous because antitrust violations are a separate sort of crime from interstate transportation of stolen property, and the ITSP case did not allege anticompetitive motives as a purpose of the conspiracy. *See Richardson,* 1990 WL 91514, at *5–6. The defense cost of the ITSP case must be excluded from any liability Federal might have under the antitrust investigation.

However, Federal seems to have misplaced the argument that the defense costs of the antitrust investigation alone, excluding those of the ITSP case, is less than the $1 million deductible. Indeed, that is not credible, since Richardson plausibly alleges that it expended over $5 million total in defending the two cases, almost $3,000,000 going to Sutherland Asbill, and Federal avers that the costs of the ITSP defense only came to about $700,000. Even subtracting the ITSP defense fees, the remainder comes to about $4.3 million of the total; if only the Sutherland Asbill fee is in dispute, and that is the only part of the fee that Federal does dispute, it comes to about $2.3 million.

To win summary judgment Federal would have to come forward with enough evidence to persuade a rational jury that less than $1 million of the legal defense fees were billed to the antitrust case. To drive down the amount in dispute, Federal asserts in its Local Rule 56 statement that Richardson's estimates of its legal fees were padded. According to Federal, Sutherland Asbill "carried" some apparently unrelated work "under the same category," as the antitrust investigation, and also

billed for *Panache,* an unrelated civil case; moreover, "some of the larger monthly bills" submitted by Sutherland Asbill did not give a breakdown between "long term business advice" or "securities advice" and the "current grand jury investigation." Federal complains that none of Sutherland Asbill fees prior to March 1991 are itemized.

That's it, and that is insufficient to support summary judgment for Federal on the deductible argument even with respect to the Sutherland Asbill. No rational jury could conclude, on the basis of this evidence, that $1.3 of Sutherland Asbill's fees were padding. *See, e.g., Liu v. T & H Machine, Inc.,* 191 F.3d 790, 796 (7th Cir. 1999) (mere existence of a scintilla of evidence insufficient in summary judgment context). Federal brings forward no evidence that the fees of the other counsel were for anything but the antitrust defense. Excluding the fees for the ITSP case, these fees came to about $1.3 million in their own right, carrying the losses over the deductible. Richardson, however, is not entitled to summary judgment because material issues of fact remain, with respect to liability in the antitrust matter, as to whether Federal was notified of and impliedly consented to the claim, and, with respect to damages (if any), whether Sutherland Asbill represented individual directors and officers.

### C.

■ Finally, Federal contends that the $1.5 million civil settlement was not covered by the policy because Richardson's officers and directors, the insured persons under the policy, were not obligated to pay it. The civil settlement obligated only Richardson to pay.[5] Richardson responds that the civil settlement admits that its officers and directors had committed

---

5. The settlement agreement "is between the United States of America and Richardson Electronics, Inc." Article 1 says that "Richardson promises and agrees to pay to the United States ... [$1.5 million]." Article 2

releases Richardson and its officers and directors from any civil liability to the United States in connection with Richardson's unlawful conduct.

crimes, and that, in consideration for paying $1.5 million, the government released any civil claims it might have had against those officers and directors. However, Richardson does not explain how a release of potential liability against its executives translates into an actual claim against them that generated losses for which they were liable. The insurance policy here, like that in *Harbor Ins. Co. v. Continental Bank Corp.*, 922 F.2d 357 (7th Cir.1997), kicks in only if there is a claim against an insured person, *id.* at 367, and the civil settlement did not generate such a claim; *see also CIPS*, 642 N.E.2d at 726 (A claim requires "an actual demand for something."). Rather, the civil settlement forestalled any actual claim from arising against an insured person.

Richardson replies that, under the "larger settlement rule," a corporation is entitled to reimbursement of all settlement costs where the corporation's liability is purely derivative of the liability of the insured directors and officers. *See Harbor Ins. Co.*, 922 F.2d at 368 ("To allow the insur[er] ... an allocation between the directors' liability and the corporation's derivative liability for the directors' acts would rob [the insured corporation] of the insurance protection that it sought and bought."). But the rule does not apply. With the civil settlement, Richardson's liability is not purely derivative of the liability of the insured directors and officers. Richardson is directly liable to pay. The officers and directors are not liable at all.

Richardson attempts to evade this result by arguing that because it is a corporation it can only be derivatively liable for the acts of its officers, since a corporation acts only through its agents. In short, Richardson's wrongdoing was that of its officers and directors, and it was liable because of what they did, so when it agreed to the civil settlement, that liability was that of its officers and directors. This novel theory, if accepted, would signal the end of the corporate form in America, and would also quite unjustifiably expand Federal's liability over the plain language of the policy.

## IV.

I DENY Federal's motion for summary judgment with respect to its liability to pay Richardson's legal defense fees for the antitrust claim, and I GRANT it with respect to liability for the ITSP case and the civil settlement. I DENY Richardson's motion for summary judgment: the issues remain for trial of whether Richardson notified Federal of its claim and Richardson impliedly consented, as well as whether Sutherland Asbill represented Richardson's officers and directors. I also DENY Richardson's motion with respect to Federal's liability to pay for the defense of the ITSP case or for the civil settlement.