Karim **ESMAILZADEH** and Ruthann J. Esmailzadeh, Appellants,

Central Properties, Michael Bower and Homes By Desire, Inc.,

v.

**JOHNSON AND SPEAKMAN,**

New York Insurance Exchange, Inc., Kansa–Brougher Syndicate, Brougher Syndicate, Inc. and Pacific Employers Insurance Company, Appellees.

No. 88–5263.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 9, 1989.

Decided March 10, 1989.

Jeff David Bagniefski, Rochester, Minn., for appellants.

David L. Hashmall, Deborah B. Hilke, John J. McGirl, Jr., and Dean K. Johnson, Minneapolis, Minn., for appellees.

Before ARNOLD, BOWMAN, and MAGILL, Circuit Judges.

ARNOLD, Circuit Judge.

This diversity case involves professional-liability insurance policies purchased from separate carriers by a law firm that was sued for malpractice by appellants Karim and Ruthann Esmailzadeh. The policies each covered malpractice "claims first made and reported" during a certain period. The District Court[1] held that the Esmailzadehs could not recover in a garnishment action against the insurers, because their malpractice claim was made, but not reported, during one policy period and reported, but not made, during another. We affirm.

I.

From January 1 to December 31, 1985, the law firm of Johnson and Speakman had claims-made professional-liability insurance coverage through appellee Pacific Employers Insurance Company (Pacific). In November 1985 the Esmailzadehs mailed a summons and complaint to the law firm, asserting that the firm failed to protect the Esmailzadehs' interest in Anoka County, Minnesota property. Speakman received this complaint, but refused to acknowledge service in accordance with Minnesota Rule of Civil Procedure 4.05. The service was thus ineffective. The law firm did not notify Pacific at this time.

The firm later purchased a claims-made policy through appellee New York Insurance Exchange, Inc. (Exchange), effective for one year beginning February 7, 1986. The firm did not disclose the fact that the Esmailzadehs had attempted to serve a complaint against it. Coverage was underwritten by appellees Brougher Syndicate, Inc. and Kansa–Brougher Syndicate (Syndicates). On the day the Syndicates' coverage began, the Esmailzadehs effected personal service of their malpractice complaint against the firm.

In July or August 1986 the firm notified Pacific and the Syndicates of the Esmailzadehs' claim. Pacific denied coverage because the claim was not reported within its policy period. The Syndicates refused to provide coverage on the ground that the claim was not first made within the period of their policies, and because the firm had not disclosed the claim on the application for insurance.

---

1. The Hon. Robert G. Renner, United States District Judge for the District of Minnesota.

The Esmailzadehs settled their claim against the firm, obtaining a judgment in Anoka County District Court. The firm also assigned to the Esmailzadehs all of its claims against the insurance companies. The Esmailzadehs served the insurance companies and the Exchange with garnishment summonses and moved the state court to allow amendment of the complaint to add the new parties. See Minn.Stat. Ann. § 571.51 (West 1988) (if probable cause shown to believe garnishee is liable, court should permit supplemental complaint). The insurance companies then removed the case to the District Court.

Adopting the magistrate's [2] recommendation, the District Court rejected the Esmailzadehs' attempt to hold Pacific liable under the rule that a delay in the giving of notice by the insured does not excuse an insurer from providing coverage in the absence of actual prejudice. See *Reliance Ins. Co. v. St. Paul Ins. Co.*, 307 Minn. 338, 343, 239 N.W.2d 922, 925 (1976). Noting that *Reliance* involved an "occurrence" policy, the Court held that the rule requiring prejudice should not be applied to "claims made and reported" policies like the one the law firm purchased from Pacific. The Court further concluded that claims-made policies are not against the public policy of Minnesota. Nor were the Syndicates liable under their policies, the Court held, because the malpractice claim was first made when Speakman received the summons and complaint by mail in November 1985—before the Syndicates' policies took effect. Finally, the Court found that the Exchange simply had acted as an agent for disclosed principals in the transaction, and was thus not liable on the contracts for insurance. Accordingly, the Esmailzadehs' motion to file a supplemental complaint was denied. This appeal followed.

## II.

■ Turning first to the District Court's refusal to apply *Reliance* to the claims-made policy issued by Pacific, we note that this Court ordinarily gives great weight to a local district court's interpretations of state law, see *Barber–Greene Co. v. National City Bank of Minneapolis*, 816 F.2d 1267, 1270 (8th Cir.1987). We conclude that the distinction between "occurrence" policies and "claims-made" policies drawn by the District Court in this case is a sound one, amply supported by persuasive authorities. Claims-made policies (sometimes called "discovery" policies) are those under which coverage is provided if the error or omission is discovered and brought to the insurer's attention during the term of the policy. 7A J. Appleman, *Insurance Law & Practice* § 4504.01, at 312–13 (Berdal ed. 1979 & Supp.1988). Under an occurrence policy, coverage is provided if the negligent act or omission occurred within the term of the policy, even if the term has since expired. *Id.*

Because the reporting requirement helps to define the scope of coverage under a claims-made policy, several courts have held that excusing a delay in notice beyond the policy period would alter a basic term of the insurance contract. See, *e.g.*, *City of Harrisburg v. International Surplus Lines Ins. Co.*, 596 F.Supp. 954, 960–62 (M.D.Pa.1984) (notice provision in claims-made policy serves materially different purpose from that in occurrence policy; claims-made coverage exists under Pennsylvania law only when claim is timely reported), *aff'd*, 770 F.2d 1067 (3d Cir.1985) *Zuckerman v. National Union Fire Ins. Co.*, 100 N.J. 304, 322–24, 495 A.2d 395, 405–06 (1985) (extension of notice period in claims-made policy creates unbargained-for expansion of coverage); *Gulf Ins. Co. v. Dolan, Fertig & Curtis*, 433 So.2d 512, 515 (Fla.1983) (extending reporting time for claims-made policy negates one of its distinguishing characteristics); *but see Sherlock v. Perry*, 605 F.Supp. 1001, 1004–05 (E.D.Mich.1985) (if notice given within reasonable time, and insurer suffers no prejudice by delay, coverage under claims-made policy exists under Michigan law). Further, the Esmailzadehs have presented no convincing reason to disturb the District

2. The Hon. J. Earl Cudd, United States Magistrate for the District of Minnesota.

Court's assessment of Minnesota public policy.[3]

The distinction thus drawn by the District Court is not based on mere semantics. In the *Reliance* case, the requirement that the insured give prompt notice was merely one of the promises made by the parties to a bilateral contract. It was not part of the policy provision describing the scope of coverage, nor was it phrased as a condition of coverage. Accordingly, the *Reliance* court was entirely justified in attaching no consequence to the insured's breach of the promise, in circumstances where the breach caused no damage to the insurer, the other party to the contract. Here, however, the very description of the risk covered included the requirement that claims be both made and reported within the policy period. The insurance company must keep the promise it made. But it was not paid to keep, nor should it be held to, a promise plainly not within the unambiguous language of the policy. As a result, plaintiffs, initially injured by their law firm's professional neglect, are again injured by the same firm's negligent failure to give notice to its insurance company. This is a grievous wrong, but it is not one which the insurance company agreed to protect against. Under this kind of policy, the company clearly disclaims the risk of failure on the part of its insured to give it timely notice. Presumably the premium is therefore lower than it would otherwise have been.

As for the Syndicates' policies, it is not disputed that Speakman received the Esmailzadehs' summons and complaint in November 1985, and that the claims-made policies purchased from the Syndicates became effective on February 7, 1986. We find no error in the District Court's determination that the malpractice claim was not first made within the Syndicates' policy period.

 The District Court found that the Exchange was not a party to the insurance contracts purchased by the law firm. The Esmailzadehs make no argument to the contrary in their briefs before this Court, yet they named the Exchange as a party to the appeal. The Exchange has requested that sanctions be awarded under Federal Rule of Appellate Procedure 38. We order that double costs shall be taxed against the Esmailzadehs in favor of appellee New York Insurance Exchange, as a sanction for the frivolous appeal against Exchange.

The order of the District Court is affirmed.

---

3. We are not persuaded by the Esmailzadehs' citation of Minnesota law governing unfair insurance practices. See Minn.Stat.Ann. § 72A.201, Subd. 8(4) (West Supp.1988) (unfair settlement practice to deny a liability claim because insured has failed or refused to report it, unless available information indicates no liability). We do not think the statute is intended to negate the express terms of a claims-made policy. See *Zuckerman v. National Union Fire Ins. Co., supra* (construing New Jersey statute).