**B & B FLOOR COVERING CO., Appellant,**

v.

**COUNTRY VIEW BUILDERS, INC., Defendant,**

**Chicago Title Insurance Company, et al., Respondents.**

**No. C6–93–343.**

Court of Appeals of Minnesota.

Aug. 10, 1993.

Review Denied Oct. 19, 1993.

ly granted summary judgment for respondents based on a subrogation theory. Minn.Stat. § 571.73, subd. 3(2) (1990) controls this case. We reverse and remand.

## FACTS

John and Helen Chun ("the Chuns") contracted with defendant Country View Builders ("Country View") to build a new home. Appellant B & B Floor Covering Co. subcontracted with Country View to install carpeting in the new home. Country View failed to pay appellant for work completed. Appellant initiated this action in November 1989 against Country View for payment of the contract price, plus interest. Appellant received a judgment but has never collected the amount.[1] Country View had a mechanics' lien against Chuns' property in the amount of $19,840.41.

When the Chuns refinanced their property through Prime Mortgage Company ("PMC") and its agent, respondent Chicago Title Insurance Company ("Chicago Title"), the loan agreement included the condition that PMC pay off the mechanics' lien in order to gain the priority secured interest in Chuns' property. The Chuns authorized PMC to pay Country View the $19,840.41 to satisfy the lien. Although the Chuns closed on their refinancing with Chicago Title on May 6, 1991, no money could be disbursed until after a three-day rescission period had passed.

On May 8, 1991, appellant faxed a garnishment summons and disclosure form to respondents, seeking to garnish the loan proceeds in order to satisfy the judgment it had against Country View, now in the amount of $7463.36. Appellant followed up with a phone call to respondent Linda Krueger, the closing agent on the Chun file, to inform her of appellant's intent to garnish the funds. In addition, appellant served papers on Krueger personally on the morning of May 10, 1991.

---

Paul E. Mattke, Jensen, Hicken, Gedde & Scott, P.A., Anoka, for B & B Floor Covering Co., appellant.

Daniel W. Voss, Larkin, Hoffman, Daly & Lindgren, Ltd., Bloomington, for Chicago Title Insurance Company, et al., respondents.

Considered and decided by SCHUMACHER, P.J., and NORTON and FLEMING*, JJ.

## OPINION

NORTON, Judge.

Appellant sought to garnish loan proceeds in the hands of respondents during the closing of a real estate transaction. When respondents failed to retain the funds, appellant sued them for the garnished amount. The trial court erroneous-

---

\* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

1. Country View has since gone through bankruptcy proceedings, leaving appellant's judgment against Country View uncollectible.

The garnishment summons listed appellant as "creditor," Country View as "debtor," and respondents Chicago Title and Linda Krueger as "garnishees." The summons ordered respondents:

You are hereby summoned and required to serve upon creditor's attorney * * * and on the debtor within 20 days after service of this garnishment summons upon you, a written disclosure of the indebtedness, money, or other property that you owe to the debtor, and answer to all written interrogatories that are served with the garnishment summons.

* * * * * *

You shall retain * * * other indebtedness, money, or other property in your possession in an amount not to exceed 110 percent of the creditor's claim until such time as the creditor causes a writ of execution to be served upon you, until the debtor authorizes you in writing to release the property to the creditor, or until the expiration of 180 days from the date of this service.

The "nonearnings disclosure" form requested amounts "due and owing the debtor from the garnishee." Respondents did not consider themselves to have any debt "due and owing" to Country View, the "debtor." Thus, on the afternoon of May 10, 1991, respondents disbursed the entire $19,840.41 to Country View to satisfy the lien against the property and complete the refinancing. Respondents returned the nonearnings disclosure form on May 15, 1991, in a timely manner, saying that they had no money debts "owed" to Country View.

Appellant received leave from the court to file a supplemental complaint against respondents for the amount of the garnishment. After a hearing on cross motions for summary judgment, the trial court granted respondents' motion and denied that of appellant.

## ANALYSIS

■ On appeal from summary judgment, this court must determine whether any genuine issues of material fact exist and whether the trial court erred when it applied the law. *City of Va. v. Northland Office Properties*, 465 N.W.2d 424, 427 (Minn.App.1991), *pet. for rev. denied* (Minn. Apr. 18, 1991). This case involves the interpretation and application of the garnishment statute. We need not defer to the trial court's conclusions when determining questions of law. *County of Lake v. Courtney*, 451 N.W.2d 338, 340 (Minn.App. 1990), *pet. for rev. denied* (Minn. Apr. 13, 1990).

The crux of this case is the newly revised garnishment statute which provides:

[T]he service of a garnishment summons under this chapter attaches:

* * * * * *

all other nonexempt indebtedness, money, or other property due or belonging to the debtor and owing by the garnishee or in the possession or under the control of the garnishee at the time of service of the garnishment summons, whether or not the same has become payable. The garnishee shall not be compelled to pay or deliver the same before the time specified by any agreement unless the agreement was fraudulently contracted to defeat a garnishment or other collection remedy.

Minn.Stat. § 571.73, subd. 3(2) (1990).[2]

■ The facts of this case meet these statutory requirements for garnishment. When the Chuns negotiated the refinancing

2. Contrary to appellant's argument, the language of this new statute is virtually the same as its predecessor, Minn.Stat. § 571.42, subd. 2 (1988):

[A]ll money, all nonexempt disposable earnings earned or to be earned within that pay period and within 60 days thereafter and other personal property including property of any kind due from or in the hands of an executor, administrator, receiver or trustee and all written evidences of indebtedness whether negotiable or not or under or overdue may be attached by garnishment, and money or any other thing due or belonging to the judgment debtor may be attached by this process before it has become payable if its payment or delivery does not depend upon any contingency, but the garnishee shall not be compelled to pay or deliver it before the time appointed by the contract.

of their property through PMC and Chicago Title, they were fully aware of the lien against their property; they understood that PMC had made the lien payoff a condition of the refinancing in order to gain priority interest in the property. To that end, PMC agreed to finance the payment of that lien, and the Chuns authorized Chicago Title to set aside the $19,840.41 and release those funds to Country View after the closing of the refinancing agreement. Under these circumstances, this money in Chicago Title's possession had a specific purpose: to be paid to Country View to satisfy the lien. Thus, when Chicago Title received the garnishment summons, it had in its possession and under its control money "due" and "owing" Country View. By definition, that money was attachable under Minn.Stat. § 571.73, subd. 3(2). The statute required Chicago Title to retain the funds pending further action. *See* Minn. Stat. § 571.73, subd. 1.

We realize this case is not resolved that simply, however. An effective garnishment process was complicated in this case by an inconsistency between the language of the garnishment summons and the statute defining attachable property. Unlike the requirement in section 571.73, subdivision 3, that the garnishee simply "possess" or have "under [its] control" money due to the debtor, the text of the statutory summons requires the garnishee:

> to serve upon the creditor's attorney * * * and on the debtor within 20 days after service of this garnishment summons upon you, a written disclosure, of the *indebtedness, money, or other property that you owe to the debtor.*

Minn.Stat. § 571.74 (1990) (emphasis added). This "owing" language suggests, on its face, that a direct obligor-obligee relationship must exist in order for the garnishee to be bound to comply with the summons. Consequently, respondents argue they were not required to retain any funds because they did not "owe" anything to Country View.

This "owing" language of the summons establishes too strict a standard for garnishment when the statute defining garnishable property encompasses property "in the possession or under the control of the garnishee" as well as property "due" and "owing." Minn.Stat. § 571.73, subd. 3(2).

The summons is merely the vehicle to carry out the garnishment of property as defined under section 571.73. Given the inconsistency between the two provisions, we conclude that the statutory definition of attachable property governs this case. The Minnesota Supreme Court has held:

> The purpose of garnishment is to reach property of the defendant in the hands of the garnishee in order to apply it in satisfaction of the judgment. The proceeding is one in the nature of an involuntary action by the defendant against the garnishee for the benefit of the plaintiff.

*Buysse v. Baumann–Furrie & Co.,* 448 N.W.2d 865, 870 (Minn.1989) (citations omitted). This statement makes no mention of an obligor-obligee/due and owing relationship between garnishor and garnishee. If the purpose of garnishment truly is to "reach property of the defendant in the hands of the garnishee," *id.,* then the Minnesota legislature must address this statutory inconsistency and draft a summons to implement Minn.Stat. § 571.73, subd. 3(2).

Although the trial court acknowledged that Minn.Stat. § 571.73 encompassed the facts of this case, the court granted respondents summary judgment on the basis of subrogation rights. To support its position, the trial court focused on the language of *Johnson Motor Co. v. Cue,* 352 N.W.2d 114, 116 (Minn.App.1984) (quoting *Henderson v. Northwest Airlines, Inc.,* 231 Minn. 503, 507, 43 N.W.2d 786, 790 (1950)) (emphasis in original), *pet. for rev. denied* (Minn. Oct. 11, 1984):

> The basic purpose of a garnishment proceeding is "to attach assets in the hands of a garnishee *without in any manner impairing the rights of the garnishee or placing him thereby in a worse position than he would have been had he been sued directly by the defendant.*"

Respondents and the trial court have gotten side-tracked on this issue.

Generally speaking, we acknowledge that meritless claims from creditors against a closing company could impair the closer's rights or, at a minimum, cause extra paperwork. In the present case, however, appellant has a valid claim against Country View and against the lien money. The $19,840.41 includes the $7463.36 that Country View owed appellant for the work appellant did in Chun's home. We find it unlikely that respondents would have been held liable for the remainder of the lien had they withheld the garnished amount. Country View could not have been heard to demand the full amount of the lien when the garnished amount was a debt they owed to appellant and the garnishment merely circumvented Country View's role in payment. Under the specific facts of this case, the court misapplied the subrogation theory.

## DECISION

The trial court erred when it resolved this case based on the subrogation issue and granted summary judgment for respondents. At the time respondents were served with the garnishment summons, they had certain loan proceeds under their control and in their possession that were due and owing to Country View, the debtor. Those funds were garnishable under Minn.Stat. § 571.73, subd. 3(2).

**Reversed and remanded.**