Beth McGLOTHLIN, creditor,
Respondent,

v.

Michael STEINMETZ, et al., Debtors,

and

State Farm Insurance Companies a/k/a
State Farm Fire and Casualty Company, garnishee, Appellant.

No. A06–1016.

Supreme Court of Minnesota.

June 19, 2008.

William Laurence Moran, Murnane Brandt, St. Paul, MN, for Appellant.

Stephen R. O'Brien, Keith D. Johnson, Minneapolis, MN, for Respondent.

OPINION

GILDEA, Justice.

This case arises out of an underlying personal injury action in which Beth McGlothlin sought damages against Dawn and Michael Steinmetz for injuries McGlothlin suffered as a result of a severe dog bite at the Steinmetz home. The

Steinmetzes had a homeowners insurance policy issued by appellant-garnishee State Farm Insurance Companies. State Farm appeals from an unpublished decision of the court of appeals, *McGlothlin v. Steinmetz*, No. A06–1016, 2007 WL 1599035 (Minn.App. June 5, 2007), reversing the district court's denial of McGlothlin's motion to add State Farm as a party and to file a supplemental complaint pursuant to Minn.Stat. § 571.75, subd. 4 (2006). Because we conclude that the court of appeals applied the appropriate standard of review and that McGlothlin demonstrated probable cause that State Farm might be liable for her injuries, we affirm.

The parties do not dispute the facts that are material to the determination of this case. Those facts show that on April 8, 2003, a dog owned by the Steinmetzes attacked and bit McGlothlin on the nose and that the attack took place at the Steinmetz home. McGlothlin filed a complaint against the Steinmetzes, alleging negligence and seeking damages for medical expenses incurred and emotional distress suffered as a result of the attack. The Steinmetzes and McGlothlin entered into a *Miller–Shugart* settlement,[1] collectible only from State Farm. Based on the settlement, the district court ordered that judgment be entered in favor of McGlothlin in the amount of $300,000—the liability coverage limit under the Steinmetzes' homeowners insurance policy.

Pursuant to Minnesota's garnishment statute, McGlothlin next served a garnishment summons and disclosure on State Farm.[2] State Farm denied any liability based on the definition of "insured" in the Steinmetzes' homeowners insurance policy. The policy defined "insured" as "you and, if residents of your household: * * * your relatives." The policy excludes insureds from coverage for bodily injury. Because, according to State Farm, McGlothlin was a "resident," of the Steinmetz home, she was an insured and thus excluded from coverage for the injury at issue.[3]

McGlothlin then moved the district court to permit the addition of State Farm as a party to the action and to grant leave for her to file and serve a supplemental complaint on State Farm pursuant to Minn. Stat. § 571.75, subd. 4. State Farm opposed the motion and submitted an affidavit from a claims representative, which contained factual information on which State Farm relied in denying coverage. In reply, McGlothlin submitted affidavits from herself and the Steinmetzes. Based on these affidavits, McGlothlin argued that

---

1. *See Miller v. Shugart*, 316 N.W.2d 729 (Minn.1982). A *Miller–Shugart* agreement protects an insured "who has been left to her own defenses because the insurer refuses to defend against the plaintiff's liability claim. The insured may escape this costly dilemma if the plaintiff is willing to undertake the burden and risk of collecting the Miller–Shugart settlement from the insurer." *Koehnen v. Herald Fire Ins. Co.*, 89 F.3d 525, 529 (8th Cir.1996).

2. Garnishment proceedings are governed by statute in Minnesota. *See* Minn.Stat. ch. 571 (2006). Garnishment is "an ancillary proceeding" to a civil action, Minn.Stat. § 571.71, and may be commenced by service of a garnishment summons together with a garnishment disclosure form, Minn.Stat.

§ 571.72. In the disclosure, the creditor sets forth the garnishee's indebtedness. Minn. Stat. § 571.75, subd. 1. If, in response to the summons and disclosure, the garnishee denies liability, the creditor may move the court for permission to add the garnishee as a party to the action and for leave to file a supplemental complaint setting forth the facts giving rise to the garnishee's liability. Minn.Stat. § 571.75, subd. 4. The statute directs that such a motion "shall be granted" if probable cause is shown. *Id.*

3. The policy does not define the terms "resident" or "household," and it does not contain the names of the individuals insured under the Steinmetz policy.

she was not a resident of the Steinmetz home and that State Farm had erroneously denied liability.

According to the affidavits, in May 2002, when she was 24 years old, McGlothlin began working for a marketing firm in Hopkins, Minnesota. She earned $14.16 per hour and her employer paid for her health insurance. When she took this job, McGlothlin was living with her parents in Bloomer, Wisconsin, on the farm where she was raised. McGlothlin and Dawn Steinmetz are half-sisters, and during the same month she began working in Hopkins, McGlothlin began living at the Steinmetz home in Eagan, Minnesota, during the work week in order to reduce her commute to work.

McGlothlin continued this living arrangement throughout 2002 and into 2003. McGlothlin spent weekends at her parents' home and weeknights at the Steinmetz house. At the beginning of each work week, McGlothlin drove directly from Wisconsin to her job in Hopkins. She would stay at the Steinmetz home Monday through Thursday nights and then drive directly from her job back to Wisconsin at the end of each work week. If McGlothlin was not working on a Friday, she would drive from Hopkins to Wisconsin on Thursday night.

Regarding the arrangement with the Steinmetzes, the record reflects that McGlothlin paid them $150 per month for rent and utilities. She had a key to their house and her own room there, where she was permitted to keep some of her clothes. McGlothlin had access to the Steinmetz kitchen, but she ate out frequently and purchased her own food, which she kept in a separate refrigerator near her room in the basement. She typically stayed in her room in the evening and did not interact with the Steinmetzes. Dawn Steinmetz traveled often for work and was not typically home during the week, and she and McGlothlin would not talk to one another while she was away. McGlothlin was responsible for cleaning her room and the nearby bathroom. She occasionally fed and walked the Steinmetz dogs, but was not required to do so.

With respect to her parents' home in Wisconsin, McGlothlin also had a key to this house and had her own room there. But she paid no rent to her parents for her accommodations at their home, and when she was with her parents, the family typically ate meals together from groceries purchased by McGlothlin's parents. Her parents also assisted McGlothlin financially by helping to pay student loans and medical bills, and by providing other spending money. McGlothlin's chores at her parents' home included cleaning the entire house, laundry, and caring for her dogs and cat. McGlothlin lists her mailing address as her parents' home, although her employer listed both her parents' and the Steinmetzes' addresses as her places of residence for employment records.[4] McGlothlin's car is registered and insured in Wisconsin. She holds a Wisconsin driver's license, and is registered to vote there. McGlothlin's checking and savings accounts are located in Wisconsin, but she has a Minnesota cellular telephone number.

After a hearing on McGlothlin's motion to add State Farm as a party and for leave for her to file and serve a supplemental complaint, the district court issued an order denying the motion. The court concluded that "[t]he undisputed facts of this

---

**4.** McGlothlin asked her employer to stop using the Steinmetzes' address as her residence, but it is unclear when she made this request.

case support a finding that, at a minimum, Ms. McGlothlin had dual residency in Bloomer, Wisconsin and at her sister's home in Eagan, Minnesota." Because the court concluded that McGlothlin was a resident of the Steinmetz home, she was excluded from coverage under the insurance policy. The court therefore held that McGlothlin had not established probable cause that State Farm was liable, and it denied McGlothlin's motion.

The court of appeals reversed. Applying a de novo standard of review, the court determined that the evidence regarding residency was "evenly divided" and "establishe[d] probable grounds that a reasonable fact-finder might determine that McGlothlin was not a resident of the Steinmetz home and that State Farm, therefore, is liable to McGlothlin under the insurance policy." *McGlothlin*, 2007 WL 1599035, at *4. We granted State Farm's petition for review.

State Farm argues that the court of appeals wrongly applied a de novo standard of review and, in the alternative, that even under a de novo standard the district court should be affirmed. We address each argument in turn.

## I.

■ We first examine whether the court of appeals erred by reviewing de novo the district court's determination that McGlothlin had not met the garnishment statute's probable cause standard. Under the statute, "where the garnishee denies liability, the creditor may move the court * * * for an order making the garnishee a party to the civil action and granting the creditor leave to file a supplemental complaint against the garnishee * * *. If probable cause is shown, the motion shall be granted." Minn.Stat. § 571.75, subd. 4. State Farm argues that a "determination of 'probable cause' in a garnishment action

should not be disturbed unless 'manifestly contrary to the evidence and without reasonable evidentiary support.'" (Quoting *Altman v. Levine & Tanz, Inc.*, 256 Minn. 48, 51, 97 N.W.2d 460, 463 (1959).) State Farm further contends that the court of appeals erred when it applied a de novo standard of review in this case. McGlothlin argues that probable cause determinations should be reviewed de novo.

Outside the specific context at issue in this case—a probable cause determination under the garnishment statute—we have recognized that a probable cause determination is one of law and is reviewed de novo. *See Chafoulias v. Peterson*, 668 N.W.2d 642, 651 (Minn.2003) (noting that in cases involving the existence of probable cause for a search and seizure, we have stated that "the determination of probable cause is a question of law for the court and that an appellate court makes an independent review of the record to determine probable cause * * * where the historical facts material to the existence of probable cause are not contested"); *Shane v. Comm'r of Pub. Safety*, 587 N.W.2d 639, 641 (Minn.1998) ("When the facts of a case are undisputed, probable cause is a question of law to be reviewed *de novo.*"); *State v. Lee*, 585 N.W.2d 378, 383 (Minn. 1998) (noting that "we review the district court's findings of historical fact relating to the probable cause determination for clear error under the clearly erroneous standard but we independently review *de novo* the issue of probable cause"); *Smith v. Munch*, 65 Minn. 256, 260, 68 N.W. 19, 21 (1896) (noting that "[i]t is also the settled law that what facts, and whether particular facts, constitute probable cause, is a question of law for the court; but what facts exist in a particular case, when there is a dispute in reference to them, is a question" of fact).

State Farm cites *Altman,* 256 Minn. at 51, 97 N.W.2d at 463, which addressed a probable cause determination made in the context of the garnishment statute, in support of its argument that a de novo standard should not apply. In *Altman,* an attorney sued to recover money for legal services rendered to multiple clients. *Id.* at 49, 97 N.W.2d at 461. The attorney also "served a garnishment summons on the First National Bank of Minneapolis, which he believed held funds due and owing to the * * * defendants." *Id.* at 49, 97 N.W.2d at 461. In response, First National denied that there was anything due and owing from it to any of the defendants. *Id.* at 50, 97 N.W.2d at 462. Subsequently, the attorney "moved for leave to file a supplemental complaint in the garnishment proceeding and supported his motion by an affidavit indicating that he had probable cause to believe that the garnishee bank had erroneously and wrongfully denied liability." *Id.* at 50–51, 97 N.W.2d at 462. The district court found "that a genuine issue of fact remained relative to the garnishment liability and that [the attorney] had submitted enough evidence to justify filing a supplemental complaint against the garnishee bank." *Id.* at 51, 97 N.W.2d at 462. On appeal we said, "We will not reverse the findings of the trial court unless they are manifestly contrary to the evidence and without reasonable evidentiary support." *Id.* at 51, 97 N.W.2d at 463 (citing *Inland Prods. Corp. v. Donovan, Inc.,* 249 Minn. 387, 82 N.W.2d 691 (1957) (holding that the district court's finding regarding whether 33 cultivators conformed to contract requirements was contrary to the evidence and without reasonable evidentiary support)). This deferential standard was appropriate because the district court had found that there was a question of fact as to the garnishee's liability. *Id.* at 51, 97 N.W.2d at 462. That we were reviewing fact-finding in *Alt-*

*man* is confirmed by our citation to *Inland Products Corp. v. Donovan, Inc.,* which involved a factual determination by the district court after a bench trial as to whether cultivators conformed to the parties' contract that required they be equipped with solid steel pivot shafts. 249 Minn. at 389–90, 82 N.W.2d at 693. Such fact-finding, however, is distinct from a probable cause determination based on undisputed historical facts.

In this case, we are not reviewing the underlying historical facts (e.g., how many nights McGlothlin stayed at the Steinmetz home or for how long) because the parties do not dispute these facts. Rather, we are reviewing the district court's determination that those underlying facts did not constitute probable cause. The "manifestly contrary to the evidence" standard from *Altman* is therefore not applicable.

State Farm also notes that in some criminal cases we have afforded deference to district court determinations of probable cause, and argues that we should do likewise in this case. We have explained that where a district court has determined that probable cause exists sufficient to support issuance of a search warrant, "we do not review the lower court's decision de novo. Rather, we afford 'great deference' to the issuing judge's finding of probable cause." *State v. Harris,* 589 N.W.2d 782, 787 (Minn.1999). The deference afforded in the warrant context is grounded in the policy determination that "[w]e do not want the warrant requirement to become so burdensome as to discourage the police from seeking review by a judge." *State v. Gail,* 713 N.W.2d 851, 858 (Minn.2006) (internal quotation marks omitted). That policy is not at issue here, and State Farm has directed us to no similar policy-based reasons that would counsel in favor of departing from our usual rule of reviewing legal determinations de novo in the context

of the garnishment statute. *See Travelers Indem. Co. v. Bloomington Steel & Supply Co.*, 718 N.W.2d 888, 894 (Minn.2006) (questions of law are reviewed de novo).

▮ Where, as in this case, the material facts are not in dispute, appellate courts should review de novo the determination of whether probable cause exists in a garnishment action. Accordingly, we hold that the court of appeals did not err in applying a de novo standard of review to the district court's determination of probable cause in this garnishment action.[5]

## II.

In the alternative, State Farm argues that even reviewed de novo the district court's probable cause determination should have been affirmed because McGlothlin presented insufficient evidence to establish probable cause. We must first determine what quantum of proof is necessary to establish probable cause under the garnishment statute; we will then discuss whether McGlothlin alleged sufficient facts to satisfy that standard.

## A.

State Farm argues that by determining that the residency evidence was "evenly divided," the court of appeals recognized that McGlothlin failed to demonstrate probable cause that coverage might exist. Essentially, State Farm argues that in order to satisfy the probable cause standard under Minn.Stat. § 571.75, subd. 4, a creditor must establish that the garnishee is more-likely-than-not liable for the debt. We do not agree.

▮ Minnesota Statutes section 571.75, subdivision 4, does not define "probable cause," but we have said that the term means "some showing by evidence which fairly and reasonably tends to show the existence of the facts alleged." *Gudbrandsen v. Pelto*, 205 Minn. 607, 609, 287 N.W. 116, 117 (1939). At this early stage in the garnishment proceedings, the probable cause determination is not a ruling on the merits, but a decision as to whether the creditor may file a supplemental complaint in order to litigate whether the garnishee is liable for the debt. Whether probable cause has been shown therefore depends not on whether the creditor will ultimately be successful, but rather "on whether the evidence shows probable grounds for believing that the garnishee *might* be held liable under the policy involved." *Id.* at 610, 287 N.W. at 117–18 (emphasis added). We therefore hold that in order to satisfy the probable cause threshold in the garnishment statute, the creditor needs to allege facts that show that it is possible that the garnishee is liable for the debt and must support those facts with evidence that fairly and reasonably tends to show the existence of the facts alleged. *Cf. Schroeder v. St. Louis County*, 708 N.W.2d 497, 507 (Minn. 2006) ("[S]ummary judgment is inappropriate if the nonmoving party has the burden of proof on an issue and presents *sufficient evidence* to permit reasonable persons to draw different conclusions."); *Lee*, 585 N.W.2d at 382 (noting that " 'probable cause to search [exists] where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that the contraband or evidence

---

5. A determination that de novo review is appropriate in this case is bolstered by the fact that, typically, "[i]nterpretation of an insurance policy and application of the policy to the facts in a case are questions of law that we review de novo." *Am. Family Ins. Co. v. Walser*, 628 N.W.2d 605, 609 (Minn.2001); *see Meister v. W. Nat'l Mut. Ins. Co.*, 479 N.W.2d 372, 376 (Minn.1992) ("[T]he interpretation of insurance contract language is a question of law as applied to the facts presented.").

of a crime will be found' ") (quoting *Ornelas v. United States,* 517 U.S. 690, 696, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996)). We turn next to examination of the evidence to determine if McGlothlin made this showing.

### B.

■ State Farm argues that the "record is clear" that McGlothlin was a resident of the Steinmetz household at the time of the dog bite and that therefore she did not make the necessary probable cause showing. McGlothlin maintains that because she was a resident of her parents' home in Wisconsin, she cannot be considered a resident of the Steinmetz home in Minnesota, and therefore she satisfied her probable cause burden. The district court found that "[t]he undisputed facts of this case support a finding that, at a minimum, Ms. McGlothlin had dual residency in Bloomer, Wisconsin and at her sister's home in Eagan, Minnesota." The court of appeals did not discuss the dual residency issue, and State Farm argues that this failure was erroneous. For her part, McGlothlin argues that the legal concept of dual residency only applies in circumstances where children reside with each of their separated or divorced parents, and that the district court was wrong to apply the concept in this case.

We recognized that someone could be a resident of two places for insurance purposes in *American Family Mutual Insurance Co. v. Thiem,* 503 N.W.2d 789, 790 (Minn.1993). In that case, 10–year–old Joshua Thiem died from injuries resulting from an automobile accident while riding in an automobile driven by his mother. *Id.* Joshua's parents' marriage had been dissolved 4 years earlier. *Id.* The question was whether Joshua was a resident of his father's household for auto insurance coverage purposes. *Id.* Although Josh-

ua's mother had sole custody, his father enjoyed reasonable visitation, which he regularly exercised. *Id.* We determined that based on the undisputed facts, "[t]he nature and extent of Joshua's routine inclusion in his father's household, together with the continued provision of space for those routine visits demonstrates that parents and child considered the child a resident of his father's household as well as his mother's household." *Id.* We concluded that Joshua was a resident of his father's household because the "record satisfies the criteria enunciated in *Firemen's Ins. Co. of Newark v. Viktora,* 318 N.W.2d 704, 706 (Minn.1982) (quoting *Pamperin v. Milwaukee Mut. Ins. Co.,* 55 Wis.2d 27, 37, 197 N.W.2d 783, 789 (1972))." *Thiem,* 503 N.W.2d at 790. And we noted that while "it is possible to have only one domicile, it is possible for insurance purposes to be a resident of more than one household." *Id.*

But *Thiem* does not purport to address whether an adult, like McGlothlin, can be a resident of two households for insurance purposes. Because of the preliminary nature of the proceedings here—coming to us on review of a determination of probable cause—it may not be necessary for us to resolve in this case the question of whether dual residency should be recognized outside the narrow confines of the factual setting presented in *Thiem.* Therefore, before addressing the dual residency question further, we look first at whether McGlothlin met the probable cause standard with regard to her residency at the Steinmetz home.

### C.

■ When determining whether someone is a "resident" for insurance purposes, we look at "the nature of the individual's relationship with the social unit that makes up the insured's household and not simply at the individual's connection to

the place where the insured resides." *Lott v. State Farm Fire & Cas. Co.*, 541 N.W.2d 304, 307 (Minn.1995). We consider three factors to inform our analysis of the residency question: (1) whether the individual and the insured are "living under the same roof"; (2) whether the individual and the insured are living "in a close, intimate and informal relationship"; and (3) whether the intended duration is likely to be substantial or indefinite. *Id.* at 307–08 (citing *Firemen's Ins. Co. of Newark v. Viktora*, 318 N.W.2d 704, 706 (Minn.1982)). The duration factor is "significant" because if the individuals at issue have been living under the same roof in a close, informal relationship for an extended period of time, "it is reasonable to conclude that the parties would consider the relationship in contracting about such matters as insurance." *Viktora*, 318 N.W.2d at 706 (internal quotation marks omitted).[6]

■ Our cases reflect that we utilize the factors to inform the analysis of the residency question, but we do not apply them rigidly. Rather, we interpret the factors broadly so that all aspects of the relationship are examined. *See Lott*, 541 N.W.2d at 308 (holding that adult son was not a resident of his mother's household because, inter alia, he did not regularly live in his mother's home, only spent 10 weekends and 1 full week at her cabin each year, was employed and self-supporting, did not look to his mother for aid, did not maintain any clothing or furnishings at her home, and did not receive mail at either her home or cabin); *Viktora*, 318 N.W.2d at 707 (concluding that son who lived with his parents for approximately 4 months during a work strike was a resident of his parents' household because the son had no practical means of supporting himself; he ate, slept, received his mail, and did chores at his parents' home; his mother did his laundry; and he did not pay rent). Moreover, before we recognized these factors, we followed the same fact-specific analysis and examined the entire nature of the relationship in assessing the residency question. *See Rosenberger v. Am. Family Mut. Ins. Co.*, 309 N.W.2d 305, 309–10 (Minn.1981) (upholding district court's finding that daughter was a resident in stepfather's household because she was not self-supporting, had lived in the home for 2 months, had no specific plans to leave the home, and was 19 years old at the time of the accident); *Pederson v. All Nation Ins. Co.*, 294 N.W.2d 693, 695 (Minn.1980) (recognizing that the "determination of * * * whether individuals are living together as members of the same household rests on the facts of each case"); *Fruchtman v. State Farm Mut. Auto. Ins. Co.*, 274 Minn. 54, 57, 142 N.W.2d 299, 301 (1966) (finding that 27–year–old son was not a resident of mother's household where he was self-supporting, had not been in the home for any period of time longer than 1 to 2 weeks in duration for the past 2½ years, and at the time of the accident was visiting his mother for a period of no more than 2 weeks); *see also Pamperin*, 197 N.W.2d at 788 (noting that "the intended duration oftentimes must be determined only after a thorough examination of all the relevant facts and circumstances surrounding the relationship"). With these principles in mind, we proceed to examine the record in the present case.

The record reflects that McGlothlin spent 3 to 4 nights per week at the Stein-

---

6. We drew the three factors from *Pamperin v. Milwaukee Mutual Insurance Co.*, 55 Wis.2d 27, 197 N.W.2d 783, 788 (1972). In *Pamperin*, the Wisconsin Supreme Court said that "no one factor is controlling but that all of the elements must combine to a greater or lesser degree in order to establish the relationship" necessary for a residency determination. *Id.* at 789.

metz home, that she had a key to the house and her own bedroom and bathroom there, and that she had been maintaining this arrangement for approximately 11 months at the time of the dog attack. But the record reflects little, if any, evidence that McGlothlin and the Steinmetzes had a close, intimate, or informal relationship. Affidavits indicate that McGlothlin did not eat meals or interact with the Steinmetzes when they were at home together, while in contrast she and her parents regularly ate meals together. McGlothlin's responsibilities at the Steinmetz house included only cleaning her room and the nearby bathroom. She occasionally fed and walked the Steinmetz dogs, but she was under no obligation to do so. In contrast, McGlothlin was responsible for cleaning her parents' entire house, doing laundry, and caring for her dogs and cat. Finally, the Steinmetzes charged McGlothlin monthly rent, and while the amount was relatively small and potentially suggestive of a close relationship, McGlothlin's parents in contrast charged her no rent.

In order to demonstrate probable cause, McGlothlin only had to show that it was possible that State Farm is liable for her injuries—in other words, that she "might" not be a resident of the Steinmetz home. *Gudbrandsen*, 205 Minn. at 610, 287 N.W. at 118. McGlothlin produced enough evidence to satisfy this low threshold. Although there is evidence that she lived under the same roof as the Steinmetzes for a long period of time, length of stay alone is not determinative of the residency question, and the duration of McGlothlin's stay does not compel the conclusion that the Steinmetzes would have considered the arrangement in contracting for insurance. *See Viktora*, 318 N.W.2d at 706. Moreover, the seemingly overarching concern in the residency cases is whether the relationship between the parties constitutes a "social unit which is something more than

a group of individuals who occasionally spend time together in the same place." *Lott*, 541 N.W.2d at 307. McGlothlin produced enough evidence to support the reasonable conclusion that her relationship with the Steinmetzes was not that of a social unit. We therefore hold that she demonstrated probable cause and that the district court should have granted her motion. Because we hold that McGlothlin demonstrated probable cause that she might not be a resident of the Steinmetz home, we need not reach the question of whether an adult can be a resident of two households for purposes of insurance.

Affirmed.

MAGNUSON, C.J., not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.