*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0931**

Melony Michaels, et al.,
Appellants,

vs.

First USA Title, LLC, et al.,
Defendants,

Triad Title & Abstract, LLC,
Respondent,

National Union Fire Insurance Company of Pittsburg,
Respondent.

**Filed April 6, 2015
Affirmed
Reilly, Judge**

Hennepin County District Court
File No. 27-CV-10-20167

Michael W. Lowden, Shari L. Lowden, The Lowden Law Firm, LLC, Minnetonka, Minnesota (for appellants)

Wayne B. Holstad, Frederic W. Knaak, Holstad & Knaak, PLC, White Bear Lake, Minnesota (for respondent Triad Title & Abstract)

David P. Pearson, Brent A. Lorentz, Benjamin R. Kwan, Winthrop & Weinstine, P.A., Minneapolis, Minnesota (for respondent National Union Fire Insurance Company of Pittsburgh)

Considered and decided by Ross, Presiding Judge; Kirk, Judge; and Reilly, Judge.

UNPUBLISHED OPINION

**REILLY**, Judge

Appellants Melony Michaels and John Foster challenge the district court's order denying their motion for leave to file a supplemental complaint, arguing that the district court erred by determining that (1) the judgment is not covered under the insurance policy issued by respondent; and (2) the garnishment proceedings were not the proper procedure to seek relief from an alleged successor in interest to the debtor. Because we agree that coverage under the policy never attached to the insured and that a garnishment proceeding is not a proper procedure to seek relief from a successor company, we affirm.

## FACTS

This court's previous March 17, 2014 opinion summarizes the conduct underlying this lawsuit. *Michaels v. First USA Title, LLC*, 844 N.W.2d 528, 530 (Minn. App. 2014). In the mid-2000s, Larry Maxwell and Jerome KingRussell led a mortgage-fraud ring and fraudulently obtained more than $2 million. Maxwell and KingRussell stole Foster's identity and used it to obtain four fraudulent mortgage loans. At each closing, Maxwell acted as the real-estate agent, KingRussell impersonated Foster, and Janie Coates, a notary public with no knowledge of the fraud, served as the closing agent. The fraud caused Foster and his wife, Michaels, enormous financial damage.

Appellants sued respondent First USA Title, LLC (First USA), Maxwell, KingRussell, Coates and others.[1] Appellants claimed that First USA was liable because

---

[1] First USA is now a defunct company. First USA decided to cease doing business on December 31, 2009, but it did not file a notice of dissolution with the state until

Coates, acting as First USA's agent, negligently failed to verify KingRussell's identity. First USA claimed that Coates was not its agent. Appellants moved for summary judgment. First USA opposed the motion and submitted an affidavit that stated that Coates was not an employee or agent of First USA. The district court granted summary judgment in favor of appellants on the negligence issue but found a genuine issue of fact as to whether Coates was an agent of First USA.

The district court held a bench trial on December 3, 2012. Appellants did not submit any testimonial evidence at the hearing and, instead, submitted "voluminous exhibits and proposed findings of fact, conclusions of law, and order for judgment." The district court was unable to grant the judgment requested and gave appellants another hearing date to submit additional evidence. At a February 1, 2013 hearing, appellants offered testimony from several witnesses regarding Coates' role with First USA and provided some evidence that referenced respondent Triad Title & Abstract, LLC (Triad) as First USA's successor entity. On March 1, 2013, the district court found that Coates was acting as an agent of First USA and that Coates and First USA were jointly and severally liable for the damages caused by Coates' negligence. The district court entered judgment for $849,131.54 against First USA. First USA did not participate in either trial or make any posttrial motions. First USA appealed the district court's determination that Coates was acting as First USA's agent. This court affirmed the district court. *Michaels*, 844 N.W.2d at 535.

---

August 30, 2010. Ultimately, the state administratively terminated First USA in August 2012. First USA was served with a summons and complaint on June 11, 2010.

On February 4, 2014, appellants sought leave to add respondent National Union Fire Insurance Company of Pittsburg PA (National Union) and Triad as garnishees pursuant to Minn. Stat. § 571.75, subd. 4 (2014). National Union issued a professional liability insurance policy to First USA. The policy provided coverage from March 29, 2007, to March 29, 2008. The policy included an endorsement that extended the coverage period to include wrongful acts occurring on or after March 29, 2002, to the end of the policy period. Appellants sought to add National Union as a garnishee-defendant on the basis that National Union's policy covered claims against First USA and sought to add Triad as a garnishee-defendant under a successor-liability theory.

On April 30, 2014, the district court denied appellants' motion to file a supplemental complaint. The district court found that, because First USA failed to provide National Union notice of appellants' lawsuit and because First USA failed to cooperate in the defense of appellants' lawsuit, the conditions precedent to receiving coverage were not satisfied. The court also determined that Triad could not be named as a garnishee under Minn. Stat. ch. 571 because appellants submitted no evidence showing that Triad owed any debt to First USA or was in possession of any property belonging to First USA. The district court declined to express any opinion on whether appellants could join Triad as a party under Minn. R. Civ. P. 15.04.

Appellants challenge the district court's denial of leave to file a supplemental complaint against National Union and Triad.

# D E C I S I O N

## I.

### A.

Appellants seek to add National Union as a garnishee under Minn. Stat. § 571.75, subd. 4, the relevant portion of which provides:

> If a garnishee holds property, money, or other indebtedness by a title that is void as to the debtor's creditors, the property may be garnished although the debtor would be barred from maintaining an action to recover the property, money, or indebtedness. In this and all other cases where the garnishee denies liability, the creditor may move the court at any time before the garnishee is discharged, on notice to both the debtor and the garnishee for an order making the garnishee a party to the civil action and granting the creditor leave to file a supplemental complaint against the garnishee and the debtor. The supplemental complaint shall set forth the facts upon which the creditor claims to charge the garnishee. If probable cause is shown, the motion shall be granted.

The district court found that First USA failed to comply with two conditions precedent to coverage under the policy, thus the court concluded that "the record [did] not support a probable cause finding that [appellants'] judgment against First USA is covered under the Policy."

When the material facts are not in dispute, "appellate courts should review de novo the determination of whether probable cause exists in a garnishment action." *McGlothlin v. Steinmetz*, 751 N.W.2d 75, 81 (Minn. 2008). In order to satisfy the "probable cause" threshold, "the creditor needs to allege facts that show that it is possible that the garnishee is liable for the debt and must support those facts with evidence that

fairly and reasonably tends to show the existence of the facts alleged." *Id.* In the context of the garnishment statute, the supreme court explained that the probable cause determination depends on whether the garnishee might be held liable under the policy and not whether the creditor will ultimately be successful on the merits. *Id.*

Appellants first argue that the probable cause showing is satisfied because the policy at issue provides coverage for appellants' claim against First USA. National Union counters that appellants cannot make it a party to a garnishment proceeding because coverage under the policy did not attach to First USA due to its lack of notice. *See Poor Richards, Inc. v. Chas. Olson & Sons & Wheel Serv. Co.*, 380 N.W.2d 225, 228 (Minn. App. 1986) ("It is well established that a judgment creditor can obtain only those rights that the judgment debtor had against the garnishee."); *S.T. McKnight Co. v. Tomkinson*, 209 Minn. 399, 401, 296 N.W. 569, 570 (1941) ("Any disability of defendant to proceed against the garnishee is inherited by the plaintiff."). Thus, we must first decide whether First USA gave notice sufficient to trigger National Union's obligation to provide coverage under the policy.

The language of the insurance policy governs the extent of an insurer's liability. *Eng'g & Const. Innovations, Inc. v. L.H. Bolduc Co.*, 825 N.W.2d 695, 704 (Minn. 2013). "Construction of an insurance policy involves a question of law." *Gen. Cas. Co. of Wis. v. Outdoor Concepts*, 667 N.W.2d 441, 443 (Minn. App. 2003). "Where there is no dispute as to the material facts, this court independently reviews the district court's interpretation of the insurance contract de novo." *Andrew L. Youngquist, Inc. v. Cincinnati Ins. Co.*, 625 N.W.2d 178, 183 (Minn. App. 2001).

6

This court applies general principles of contract interpretation to insurance policies. *Lobeck v. State Farm Mut. Auto. Ins. Co.*, 582 N.W.2d 246, 249 (Minn. 1998). The goal in interpreting insurance policies is to ascertain and apply the intentions of the parties. *Midwest Family Mut. Ins. Co. v. Wolters*, 831 N.W.2d 628, 636 (Minn. 2013). We construe an insurance contract as a whole and give effect to the plain and ordinary meaning of its terms. *Id.* And the party asserting coverage must establish a prima facie case that the policy applies. *Eng'g & Const. Innovations*, 825 N.W.2d at 705. The terms and conditions of the policy dictate what the party must show to make a prima facie case. *Domtar, Inc. v. Niagara Fire Ins. Co.*, 563 N.W.2d 724, 736 (Minn. 1997).

Relevant portions of First USA's policy include:

> **1.    ERRORS AND OMISSIONS.**
>
> To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as Damages resulting from any claim or claims first made against the Insured and reported to the Company during the Policy Period for any Wrongful Act of the Insured or of any other person for whose actions the Insured is legally responsible, but only if such Wrongful Act first occurs during the Policy Period and solely in the conduct of the Insured's Profession as stated in Item 6 of the Declarations.

The "**SPECIAL PROVISIONS**" section of the policy provides:

> 3.    Loss Provisions.
>
> The Insured shall, as a condition precedent to the availability of the rights provided under this policy, give written notice to the Company as soon as practicable of any claim made against the Insured. Notice given by or on behalf of the Insured to any authorized representative of the Company, with particulars sufficient to identify the Insured, shall be deemed notice to the company.

Under the "**GENERAL CONDITIONS**" of the policy:

> 2.     All notices of claims, applications, demands or requests provided for in this policy shall be in writing and addressed to the Company's Administrative Offices, 175 Water Street, New York, N.Y. 10038.
>
> 3.     The Insured shall cooperate with the Company and, upon the Company's request assist in making settlements and in the conduct of suits.  The Insured shall attend hearings, trial and depositions and shall assist in securing and giving evidence and obtaining the attendance of witnesses.  The Insured shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense.
>
> 4.     No action shall lie against the Company unless, as a condition precedent thereto, the Insured shall have fully complied with all the terms of the policy, nor until the amount of the Insured's obligation to pay shall have been finally determined either by judgment against the Insured after actual trial and appeal or by written agreement of the Insured and the claimant subject to the prior written consent of the Company.

Appellants claim that the wrongful acts that occurred in June and July 2006 were reported in a March 21, 2008 correspondence, which constituted notice triggering coverage under the policy and coverage attached to the claims arising from those acts. National Union responds that none of the notices relied on by appellants were sufficient to trigger coverage.

In the March 21 correspondence, First USA reported the wrongful acts by Coates, First USA's agent, and the subsequent lawsuit initiated by Centennial Mortgage & Funding, Inc. (Centennial).  Attached to the March 21 correspondence was a claim-reporting sheet that listed June 27, 2006, and July 26, 2006, as the dates of the "alleged error or omission."  The correspondence listed Centennial as the claimant.  The complaint

8

that was included with the correspondence also alleged that "the negligence of Chicago Title and its agent, First U.S.A. Title, was the proximate cause of damages to Centennial Mortgage." On March 27, 2008, an AIG Domestic Claims, Inc. representative, acting on behalf of National Union, responded to the claim report and informed First USA that a file number had been established for its claim policy.

Appellants claim that the March 21 correspondence considered in tandem with a "Special Reporting Clause" converts the policy from a claims-made policy to an occurrence policy.[2] The following clause was included in an endorsement to the policy:

> 4.      Special Reporting Clause
>
> If during the Policy Period or during the extended reporting period (if the right is exercised by the Insured in accordance with Provision 5) the Insured shall become aware of any occurrence which may reasonably be expected to give rise to a claim against the Insured for a Wrongful Act which occurs on or after *March 29, 2002* and prior to the end of the Policy Period, and provided the Insured gives written notice to the Company during the Policy Period or the extended reporting period (if applicable) of the nature of the occurrence and specifics of the possible Wrongful Act, any claim which is subsequently made against the Insured arising out of such Wrongful Act shall, for the purposes of this policy, be treated as a claim made during the currency hereof.

Thus, appellants argue that, once First USA reported the wrongful acts to National Union in the March 21 correspondence, coverage was triggered and all subsequent claims arising from those acts are covered under the policy. We disagree.

---

[2] A claims-made policy conditions coverage on the insurer receiving notice of the claim while the policy is still in effect, while an occurrence policy guarantees coverage for an event that occurs during the coverage period. *N.K.K. by Knudson v. St. Paul Fire & Marine Ins. Co.*, 555 N.W.2d 21, 25 (Minn. App. 1996), *review denied* (Dec. 23, 1996).

Although the special reporting provision did switch the policy to an occurrence policy for claims arising out of reported wrongful acts, the special reporting clause does not negate the insured's obligation to notify National Union of any resulting claims "as soon as practicable" under the "Special Provision" section of the policy. Rather, the special reporting provision merely expanded the policy's limits by providing retroactive coverage for prior wrongful acts and the consequential, properly reported claims.

Here, the insured, First USA, gave notice of the wrongful acts on March 21, 2008, and of the subsequent lawsuit brought by Centennial. But First USA did not give National Union notice of *this* lawsuit. The policy language required First USA to give written notice of any claim as soon as practicable, and First USA never gave National Union notice of appellants' claim at any time after it was brought in 2010. We cannot set aside the plain language of the policy and conclude that a 2008 notice concerning a different lawsuit was sufficient to satisfy the notice provisions of the policy with respect to this separate legal action.

Appellants next argue that an insurance company must show actual prejudice to defeat liability when notice requirements were not satisfied. Appellants cite to *Reliance Ins. Co. v. St. Paul Ins. Cos*, 307 Minn. 338, 342, 239 N.W.2d 922, 925 (1976), in an attempt to distinguish professional liability policies from other insurance policies. In *Reliance*, the supreme court analyzed whether the insurance companies were prejudiced due to the extreme length of time between the wrongful act and notice. 307 Minn. at 343, 239 N.W.2d at 925. Importantly, the notice provision in *Reliance* did not contain the "condition precedent" language that is present in the policy at issue. Minnesota law is

10

clear that a showing of actual prejudice is not required when notice is a condition precedent to coverage under an insurance policy. *See Cargill, Inc. v. Evanston Ins. Co.*, 642 N.W.2d 80, 87 (Minn. App. 2002) (written notice of claim was a condition precedent); *Sterling State Bank v. Virginia Sur. Co.*, 285 Minn. 348, 350, 173 N.W.2d 342, 344 (1969) (notice of loss was a condition precedent). Because the policy language at issue made coverage contingent on notice as a "condition precedent," National Union does not have to show actual prejudice.

Even if National Union did have to show actual prejudice, it can satisfy this showing. Because National Union did not receive any kind of notice regarding appellants' lawsuit against First USA until, at earliest, two-and-one-half years after the initiation of the lawsuit, National Union had no opportunity to investigate the claim and participate in a defense. Moreover, First USA's failure to participate during the course of the lawsuit doomed the appeal and resulted in this court affirming the large judgment. Therefore, due to lack of notice of appellants' claim, coverage did not attach under the policy and appellants cannot establish probable cause that the policy covered the claim. Accordingly, we affirm the district court's denial of appellants' motion to supplement the complaint and add National Union as a garnishee.

**B.**

Appellants claim that National Union's denial of liability based on the lack of notice violates Minnesota insurance law. The district court found appellants' arguments under the Minnesota Unfair Claims Practices Act (UCPA) meritless because the UCPA

11

only creates an administrative enforcement scheme and does not provide a private cause of action. Appellants rely on the following provision of the UCPA:

> The following acts by an insurer, adjuster, or self-insured, or self-insurance administrator constitute unfair settlement practices:
> . . . .
>
> (4) denying a liability claim because the insured has failed or refused to report the claim, unless an independent evaluation of available information indicates there is no liability[.]

Minn. Stat. § 72A.201, subd. 8(4) (2014).

Caselaw is clear that the UCPA does not permit private causes of actions. *See Morris v. Am. Family Mut. Ins. Co.*, 386 N.W.2d 233, 238 (Minn. 1986) (holding that no private causes of action exist for violations of the UCPA); *Glass Serv. Co. v. State Farm Mut. Auto. Ins. Co.*, 530 N.W.2d 867, 872 (Minn. App. 1995). Nonetheless, on appeal, appellants argue that they are not asserting a private cause of action against National Union; rather, they are challenging whether National Union has a legally recognizable basis for avoiding liability under the policy "if such an affirmative defense is prohibited by state law."

National Union cites *Esmailzadeh v. Johnson & Speakman*, 869 F.2d 422 (8th Cir. 1989), to support its contention that it is not against Minnesota law or public policy to deny coverage when an insured fails to report a claim as specified by the policy. In *Esmailzadeh*, the plaintiffs sued their law firm for legal malpractice. 869 F.2d at 423. They eventually sued to impose liability on the insurer who provided the firm's malpractice coverage at the time the plaintiffs made their claim. *Id.* at 424. But the firm

12

refused to acknowledge service of the plaintiff's malpractice complaint and never notified their insurer while the policy was in effect. *Id.* at 423. The Eighth Circuit Court of Appeals applied Minnesota law and affirmed the decision that the insurer was not liable because it had issued a claims-made policy to the firm and the firm, by not notifying the insurer, had never satisfied the conditions of coverage. *Id.* at 425. In a footnote, the court addressed Minn. Stat. § 72A.201, subd. 8(4), stating that "[w]e do not think the statute is intended to negate the express terms of a claims-made policy." *Id.* at 424-25 n.3. Moreover, the court recognized the unfortunate consequence: the plaintiffs, who were initially harmed by their attorney's malpractice, were again harmed by the firm's failure to notify its insurer of the claim against it. *Id.* at 425. But the court noted that this "grievous wrong . . . [was] not one which the insurance company agreed to protect against." *Id.*

We are mindful of the circumstances that led appellants to seek judicial relief—First USA's failure to follow its own policy—but this court cannot create new causes of action. Coverage under the policy was dependent on National Union receiving notice of claims against First USA. Although First USA created an inequitable dilemma for appellants, appellants cannot use Minn. Stat. § 72A.201, subd. 8(4), to create coverage where none previously existed.

## II.

Finally, appellants argue that the district court erred when it denied leave to amend the complaint to add Triad as a garnishee because Triad is the alter ego of First USA and

13

assumed the debt First USA owed to appellants. Triad did not file a brief with this court.[3]

This court reviews the interpretation and application of the garnishment statute de novo. *B & B Floor Covering Co. v. Country View Builders, Inc.*, 504 N.W.2d 272, 274 (Minn. App. 1993), *review denied* (Minn. Oct. 19, 1993). Garnishment is a "statutory remedy which may not be enlarged or extended by implication to cover cases which are not clearly within both its letter and spirit." *Henderson v. Nw. Airlines*, 231 Minn. 503, 510, 43 N.W.2d 786, 791 (1950).

In order to add Triad to a garnishment proceeding, appellants must show that it is possible that Triad is liable for the debt of First USA and must support those facts with evidence that fairly and reasonably tend to show the existence of the facts alleged. *McGlothlin*, 751 N.W.2d at 81. The district court found that, because appellants "presented no evidence that Triad owes any debt to, or is in possession of any property belonging to, First USA," the garnishment statute could not attach to Triad. The district court also noted that, although Triad may be a successor entity of First USA or may have been the recipient of a fraudulent transfer, Minn. Stat. ch. 571 is not the proper vehicle to resolve those issues.

In *Johns v. Harborage I, Ltd.*, the supreme court addressed the available avenues for relief when a judgment creditor sought leave to amend a complaint to add a claim for successor liability post-judgment and post-appeal. 664 N.W.2d 291, 293 (Minn. 2003). Appellant-Johns received a judgment against respondent-Harborage I, Ltd. in a sexual-

---

[3] If a respondent fails to file a brief, this court must decide the case "on the merits." Minn. R. Civ. App. P. 142.03.

harassment action, but Johns was unable to collect on the judgment because Harborage's assets were liquidated after it was sold to respondent-Jillian's Entertainment Corporation. *Id.* Johns then moved to add Jillian's as a defendant, and the district court granted the motion and found Jillian's liable as a successor entity. *Id.* at 294-95. This court reversed on a number of grounds, concluding that

> (1) Rule 15.01 of the Minnesota Rules of Civil Procedure did not permit Johns' post-judgment amendment of the complaint; (2) garnishment was the only method by which Johns could assert a successor liability claim against Jillian's; and (3) the district court erred as a matter of law in finding that Jillian's was liable as a successor corporation.

*Id.* at 295. On appeal, the supreme court noted that the decision to permit or deny amended pleadings is within the discretion of the district court and this decision will not be reversed absent a clear abuse of discretion. *Id.* Ultimately, the supreme court held that Johns was permitted to amend the complaint post-judgment. *Id.* at 296. Next, the supreme court rejected this court's conclusion that "Johns was barred from pursuing her claim against Jillian's under the amended complaint because the appropriate remedy was garnishment under Minn. Stat. § 571.71-.932 (2000)." *Id.* The supreme court concluded that a garnishment proceeding was "not the exclusive or even an appropriate remedy to enforce the judgment" because Jillian's was not indebted to Harborage. *Id.* Finally, the supreme court analyzed whether Jillian's was liable as a successor corporation. *Id.* at 296-97.

While the proceeding in *Johns* was not under the garnishment statute, the opinion illustrates what remedy is "appropriate" to enforce judgment against a successor

15

corporation.  Here, we conclude that potential successor liability does not fit within the property subject to a garnishment proceeding under Minn. Stat. § 571.73, subd. 3 (2014). Accordingly, the district court did not err in denying appellant's motion to add Triad as a garnishee.

**Affirmed.**